772 So.2d 1273 (2000)
PALM BEACH COUNTY CANVASSING BOARD, Petitioner,
v.
Katherine HARRIS, etc., et al., Respondents.
Volusia County Canvassing Board, et al., Appellants,
v.
Katherine Harris, etc., et al., Appellees.
Florida Democratic Party, Appellant,
v.
Katherine Harris, etc., et al., Appellees.
Nos. SC00-2346, SC00-2348 and SC00-2349.
Supreme Court of Florida.
December 11, 2000.
*1277 Denise D. Dytrych, Palm Beach County Attorney, and James C. Mize, Jr., Andrew J. McMahon and Gordon Selfridge, Assistant Palm Beach County Attorneys, West Palm Beach, Florida; Bruce Rogow and Beverly A. Pohl of Bruce S. Rogow, P.A., Fort Lauderdale, Florida; and Robert A. Butterworth, Attorney General, pro se, Paul F. Hancock and Kimberly J. Tucker, Deputy Attorneys General, George Waas and Jason Vail, Assistant Attorneys General, Tallahassee, Florida, and Cecile Luttmer Dykas, Assistant Attorney General, Fort Lauderdale, Florida, for Petitioners.
Deborah K. Kearney, General Counsel, and Kerey Carpenter, Assistant General Counsel, Florida Department of State, Tallahassee, Florida; and Joseph P. Klock, Jr., Jonathan Sjostrom, Victoria L. Weber, John W. Little, III, Donna E. Blanton, Gabriel E. Nieto, Ricardo M. Martinez-Cid, Elizabeth C. Daley, Arthur R. Lewis, Jr. and Elizabeth J. Maykut of Steel, Hector & Davis, LLP, Tallahassee, Florida, for the Elections Canvassing Commission; and Terrell C. Madigan, Harold R. Mardenborough, Jr., Christopher Barkas and Matt Butler of McFarlain, Wiley, Cassedy & Jones, P.A., Tallahassee, Florida, for Respondents in No. SC00-2346, and Appellees in Nos. SC00-2348 and SC00-2349.
John D.C. Newton, II of Berger Davis & Singerman, Tallahassee, Florida; Mitchell W. Berger of Berger Davis & Singerman, Fort Lauderdale, Florida; W. Dexter *1278 Douglass of the Douglass Law Firm, Tallahassee, Florida; David Boies of Boies, Schiller & Flexner, LLP, Armonk, New York; Ronald A. Klain, Democratic National Committee, Washington, DC; Lyn Utrecht and Eric Kleinfeld of Ryan, Phillips, Utrecht and MacKinnon, Washington, DC; Andrew J. Pincus, c/o Gore/Lieberman Recount Committee, Washington, DC; Laurence Tribe, Cambridge, Massachusetts; and Karen Gievers, of Karen Gievers, P.A., Tallahassee, Florida, for Albert A. Gore and the Florida Democratic Executive Committee, Intervenors/Petitioners in No. SC00-2346, and Appellant in No. SC00-2349.
Edward A. Dion, County Attorney for Broward County, Norman M. Ostrau, Deputy County Attorney, Andrew J. Meyers, Chief Appellate Counsel, and Tamara M. Scrudders and Jose Arrojo, Assistant County Attorneys, Fort Lauderdale, Florida; and Samuel S. Goren, James A. Cherof and Michael D. Cirullo, Jr. of Josias, Goren, Cherof, Doody & Ezrol, P.A., Fort Lauderdale, Florida, for The Broward County Canvassing Board and Jane Carroll, as Broward County Supervisor of Elections, Intervenors/Petitioners in No. SC00-2346 and Intervenors in Nos. SC00-2348 and SC00-2349.
Barry Richard of Greenberg, Traurig, P.A., Tallahassee, Florida; Jason L. Unger of Gray, Harris & Robinson, Tallahassee, Florida; Michael A. Carvin of Cooper, Carvin & Rosenthal, PLLC, Washington, DC; Benjamin L. Ginsberg of Patton, Boggs, LLP, Washington, DC; Alex M. Azar II of Wiley, Rein & Fielding, Washington, DC; George J. Terwilliger, III, and Timothy E. Flanigan of White & Case, LLP, Washington, DC; Marcos D. Jimenez D'Clouet of White & Case, Miami, Florida; and R. Ted Cruz, Bush-Cheney Recount Committee, Austin, Texas, for Honorable George W. Bush, Intervenor/Respondent in No. SC00-2346 and Intervenor in Nos. SC00-2348 and SC00-2349.
Thomas R. Tedcastle, General Counsel, Florida House of Representatives, Tallahassee, Florida; D. Stephen Kahn, General Counsel, The Florida Senate, Tallahassee, Florida; Roger J. Magnuson and James K. Langdon of Dorsey & Whitney LLP, Minneapolis, Minnesota; and Einer Elhauge and Charles Fried, Cambridge, Massachusetts, for the Florida Legislature, Amici Curiae.
Lois Frankel, pro se, Tallahassee, Florida, as a member of the Florida Legislature and as minority leader of the Florida House of Representatives, Amicus Curiae.
Robert G. Kerrigan of Kerrigan, Estess, Rankin & McLeod, Pensacola, Florida, for Senator Thomas E. Rossin, a member of the Florida Legislature and the minority leader of the Florida Senate, Amicus Curiae.
John D.C. Newton, II of Berger Davis & Singerman, Tallahassee, Florida; Mitchell W. Berger of Berger Davis & Singerman, Fort Lauderdale, Florida; W. Dexter Douglass of the Douglass Law Firm, Tallahassee, Florida; David Boies of Boies, Schiller & Flexner, LLP, Armonk, New York; Ronald A. Klain, Democratic National Committee, Washington, DC; Lyn Utrecht and Eric Kleinfeld of Ryan, Phillips, Utrecht and MacKinnon, Washington, DC; Andrew J. Pincus, c/o Gore/Lieberman Recount Committee, Washington, DC; Laurence Tribe, Cambridge, Massachusetts; and Karen Gievers, of Karen Gievers, P.A., Tallahassee, Florida; Denise D. Dytrych, Palm Beach County Attorney, and James C. Mize, Jr., Andrew J. McMahon and Gordon Selfridge, Assistant Palm Beach County Attorneys, West Palm Beach, Florida; Bruce Rogow and Beverly A. Pohl of Bruce S. Rogow, P.A., Fort Lauderdale, Florida; and Robert A. Butterworth, Attorney General, pro se, Paul F. Hancock and Kimberly J. Tucker, Deputy Attorneys General, George Waas and Jason Vail, Assistant Attorneys General, Tallahassee, Florida, and Cecile Luttmer Dykas, Assistant Attorney General, Fort Lauderdale, Florida, for Albert A. Gore *1279 and the Canvassing Board of Palm Beach County, Florida, Appellants.
PER CURIAM.
This case is before the Court on remand from the United States Supreme Court.[1] We respond to several issues raised by the United States Supreme Court as explained herein.[2]

I. FACTS
On Tuesday, November 7, 2000, the State of Florida, along with the rest of the nation, conducted a general election for the President of the United States. The Florida Division of Elections ("Division") reported on Wednesday, November 8, that Governor George W. Bush, the Republican candidate, had received 2,909,135 votes and Vice President Albert Gore Jr., the Democratic candidate, had received 2,907,351 votes. Because the overall difference in the total votes cast for each candidate was less than one-half of one percent of the total votes cast for that office, an automatic recount was conducted.[3] The recount resulted in a reduced figure for the overall difference between the two candidates.

A. The Manual Recounts
In light of the closeness of the election, the Florida Democratic Executive Committee, on Thursday, November 9, requested that manual recounts be conducted in Broward, Miami-Dade, Palm Beach, and Volusia Counties. The county canvassing boards ("Boards") of these counties conducted sample manual recounts of at least one percent of the ballots cast. Several of the Boards determined that the manual recounts showed "an error in the vote tabulation which could affect the outcome of the election," and the Boards voted to conduct countywide manual recounts. See § 102.166(5), Fla. Stat. (2000).
Because the Palm Beach County Canvassing Board was concerned that the recounts would not be completed prior to the seven-day deadline set forth in sections 102.111 and 102.112, Florida Statutes (2000), the Board sought an advisory opinion from the Division. The Division issued Advisory Opinion DE 00-10 wherein the Division advised the Board that absent unforeseen circumstances the county's returns must be received by 5 p.m. on the seventh day following the election in order to be included in the certification of statewide results.
Relying on this advisory opinion, the Florida Secretary of State ("Secretary") on Monday, November 13, issued a statement wherein she announced that she would ignore returns of manual recounts received by the Florida Department of State ("Department") after 5 p.m., Tuesday, November 14. The Volusia County Canvassing Board on Monday, November 13, filed suit in circuit court in Leon County, seeking declaratory and injunctive relief; the candidates and the Palm Beach County Canvassing Board were allowed to intervene.

*1280 B. The Legal Proceedings
The trial court ruled on Tuesday, November 14, that the deadline was mandatory but that the Volusia Board could amend its returns at a later date and that the Secretary, after "considering all attendant facts and circumstances," could exercise her discretion in determining whether to ignore the amended returns. Later that day, the Volusia Board filed a notice of appeal and the Palm Beach Board filed a notice of joinder in the appeal.
Subsequent to the circuit court's order, the Secretary announced that she was in receipt of certified returns (i.e., the returns resulting from the initial recount) from all counties in the state. The Secretary then instructed Florida's Supervisors of Elections ("Supervisors") that they must submit to her by 2 p.m., Wednesday, November 15, a written statement of "the facts and circumstances" justifying any belief on their part that they should be allowed to amend the certified returns previously filed. After considering the reasons in light of specific criteria,[4] the Secretary, on Wednesday, November 15, rejected the reasons and again announced that she would not accept the amended returns but rather would rely on the earlier certified totals for the four counties. The Secretary further stated that after she received the certified returns of the overseas absentee ballots from each county she would certify the results on Saturday, November 18.
On Thursday, November 16, the Florida Democratic Party and Vice President Gore filed a motion in circuit court in Leon County, seeking to compel the Secretary to accept amended returns. After conducting a hearing, the court denied relief in a brief order dated Friday, November 17. Both the Democratic Party and Vice President Gore appealed. The First District Court of Appeal certified both of the underlying trial court orders to this Court via the Court's "pass-through" jurisdiction. By orders dated Friday, November 17, this Court accepted jurisdiction, set an expedited briefing schedule, and enjoined the Secretary and the Elections Canvassing Commission ("Commission") from certifying *1281 the results of the presidential election until further order of this Court.
This Court on Tuesday, November 21, issued an opinion reversing the trial court's order based on the following analysis: Due to several ambiguities in the Florida Election Code ("Code"), the Court determined that legislative intent as discerned through traditional rules of statutory construction dictated a remedy based on the particular facts of this case.[5] Bush sought certiorari review before the United States Supreme Court and that Court vacated this Court's judgment and remanded for proceedings consistent with its opinion.[6]

II. ISSUES
The questions before this Court include the following: Under what circumstances may a Board authorize a countywide manual recount pursuant to section 102.166(5); and under what circumstances should the Secretary and Commission accept such recounts when the returns are certified and submitted by the Board after the seven-day deadline set forth in sections 102.111 and 102.112?[7]

III. THE APPLICABLE LAW
A fundamental principle governing presidential election law in the United States is set forth in article II, section 1, United States Constitution, which confers on state legislatures the power to regulate the appointment of presidential electors:
Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress: but no Senator or Representative, or Person holding an Office of Trust or profit under the United States shall be appointed an Elector.
U.S. Const. art. II, § 1 (emphasis added). The United States Supreme Court explained the import of this clause vis-a-vis state constitutions:
The clause under consideration does not read that the people or the citizens shall appoint, but that "each state shall"; and if the words "in such manner as the legislature thereof may direct," had been omitted, it would seem that the legislative power of appointment could not have been successfully questioned in the absence of any provision in the state constitution in that regard. Hence the insertion of those words, while operating as a limitation upon the State in respect of any attempt to circumscribe the legislative power, cannot be held to operate as a limitation on that power itself.
McPherson v. Blacker, 146 U.S. 1, 25, 13 S.Ct. 3, 36 L.Ed. 869 (1892).
Although the Constitution vested the power to appoint the presidential electors "in such Manner as the Legislature... may direct," McPherson also made clear that the electors
may be chosen by the legislature, or the legislature may provide that they shall *1282 be elected by the people of the State at large ... and it is, no doubt, competent for the legislature to authorize the governor, or the Supreme Court of the state, or any other agent of its will, to appoint these electors.
McPherson, 146 U.S. at 34-35, 13 S.Ct. 3 (emphasis added). In this State, at least since 1847, the right to elect the President of the United States has been firmly vested in the citizens of this State by the Legislature. As section 103.011, Florida Statutes (2000), provides:
Electors of President and Vice President, known as presidential electors, shall be elected on the first Tuesday after the first Monday in November of each year the number of which is a multiple of 4.

(Emphasis added.)
The United States Congress also has provided that where any dispute concerning the appointment of electors is settled at least six days prior to the date set for the meeting of electors and is done so pursuant to state laws enacted prior to the date of election, the state's conclusion concerning the settlement of such disputes is conclusive:
If any State shall have provided, by laws enacted prior to the day fixed for the appointment of the electors, for its final determination of any controversy or contest concerning the appointment of all or any of the electors of such State, by judicial or other methods or procedures, and such determination shall have been made at least six days before the time fixed for the meeting of the electors, such determination made pursuant to such law so existing on said day, and made at least six days prior to said time of meeting of the electors, shall be conclusive, and shall govern in the counting of the electoral votes as provided in the Constitution, and as hereinafter regulated, so far as the ascertainment of the electors appointed by such State is concerned.
3 U.S.C. § 5 (1994) (emphasis added). Consistent with the above provisions of federal law and with longstanding principles of state law, the Florida Legislature in 1951 enacted the Florida Election Code, contained in chapters 97-106, Florida Statutes (2000), which sets forth uniform criteria regulating elections in this state and which provides methods and procedures, including judicial methods and procedures, for the final determination of any controversy or contest concerning the appointment of all or any of the electors of this state.

IV. LEGISLATIVE INTENT
Legislative intent-as always-is the polestar that guides a court's inquiry into the provisions of the Florida Election Code. See Florida Birth-Related Neurological Injury Compensation Ass'n v. Florida Div. of Admin. Hearings, 686 So.2d 1349 (Fla.1997). Where the language of the Code is clear and amenable to a reasonable and logical interpretation, courts are without power to diverge from the intent of the Legislature as expressed in the plain language of the Code. See Starr Tyme, Inc. v. Cohen, 659 So.2d 1064 (Fla.1995). As noted above, however, chapter 102 is unclear and in conflict in several respects. In light of these ambiguities, the Court must resort to traditional rules of statutory construction to determine legislative intent. See Capers v. State, 678 So.2d 330 (Fla.1996).

V. LEGAL OPINION OF THE DIVISION OF ELECTIONS
The first issue this Court must resolve is whether a County Board may conduct a countywide manual recount where it determines there is an error in vote tabulation that could affect the outcome of the election. Here, the Division issued opinion DE 00-13, which construed the language "error in vote tabulation" to exclude the situation where a discrepancy between the original machine return and sample manual recount is due to the manner in which a ballot has been marked or punched.
*1283 Florida courts generally will defer to an agency's interpretation of statutes and rules the agency is charged with implementing and enforcing. See Donato v. American Tel. & Tel. Co., 767 So.2d 1146, 1153 (Fla.2000); Smith v. Crawford, 645 So.2d 513, 521 (Fla. 1st DCA 1994). Florida courts, however, will not defer to an agency's opinion that is contrary to law. See Donato, 767 So.2d at 1153; Nikolits v. Nicosia, 682 So.2d 663, 666 (Fla. 4th DCA 1996). We conclude that the Division's advisory opinion regarding vote tabulation is contrary to law because it contravenes the plain meaning of section 102.166(5).
Pursuant to section 102.166(4)(a), a candidate who appears on a ballot, a political committee that supports or opposes an issue that appears on a ballot, or a political party whose candidate's name appeared on the ballot may file a written request with the County Board for a manual recount This request must be filed with the Board before the Board certifies the election results or within seventy-two hours after the election, whichever occurs later.[8] Upon the filing of the written request for a manual recount, the canvassing board may authorize a manual recount.[9] The decision whether to conduct a manual recount is vested in the sound discretion of the Board.[10] If the canvassing board decides to authorize the manual recount, the recount must include at least three precincts and at least one percent of the total votes cast for each candidate or issue, with the person who requested the recount choosing the precincts to be recounted.[11] If the manual recount indicates an "error in the vote tabulation which could affect the outcome of the election," the county canvassing board "shall":
(a) Correct the error and recount the remaining precincts with the vote tabulation system;
(b) Request the Department of State to verify the tabulation software; or

(c) Manually recount all ballots.
§ 102.166(5)(a)-(c), Fla. Stat. (2000) (emphasis added).
The issue in dispute here is the meaning of the phrase "error in the vote tabulation" found in section 102.166(5). The Division opines that an "error in the vote tabulation" only means a counting error resulting from incorrect election parameters or an error in the vote tabulating software. We disagree.
The plain language of section 102.166(5) refers to an error in the vote tabulation rather than the vote tabulation system. On its face, the statute does not include any words of limitation; rather, it provides a remedy for any type of mistake made in tabulating ballots. The Legislature has utilized the phrase "vote tabulation system" and "automatic tabulating equipment" in section 102.166 when it intended to refer to the voting system rather than the vote count. Equating "vote tabulation" with "vote tabulation system" obliterates the distinction created in section 102.166 by the Legislature.
Sections 101.5614(5) and (6) also support the proposition that the "error in vote tabulation" encompasses more than a mere determination of whether the vote tabulation system is functioning. Section 101.5614(5) provides that "[n]o vote shall be declared invalid or void if there is a clear indication of the intent of the voter as determined by the canvassing board." Conversely, section 101.5614(6) provides that any vote in which the Board cannot discern the intent of the voter must be discarded. Taken together, these sections suggest that "error in the vote tabulation" includes errors in the failure of the voting machinery to read a ballot and not simply *1284 errors resulting from the voting machinery.
Moreover, section 102.141(4), which outlines the Board's responsibility in the event of a recount, states that the Board "shall examine the counters on the machines or the tabulation of the ballots cast in each precinct in which the office or issue appeared on the ballot and determine whether the returns correctly reflect the votes cast." § 102.141, Fla. Stat. (2000). Therefore, an "error in the vote tabulation" includes a discrepancy between the number of votes determined by a vote tabulation system and the number of votes determined by a manual count of a sampling of precincts pursuant to section 102.166(4).
Although error cannot be completely eliminated in any tabulation of the ballots, our society has not yet gone so far as to place blind faith in machines. In almost all endeavors, including elections, humans routinely correct the errors of machines. For this very reason Florida law provides a human check on both the malfunction of tabulation equipment and error in failing to accurately count the ballots. Thus, we find that the Division's opinion DE 00-13 regarding the ability of county canvassing boards to authorize a manual recount is contrary to the plain language of the statute.
Having concluded that the county canvassing boards have the authority to order countywide manual recounts, we must now determine whether the Commission[12] must accept amended returns filed after the seven-day deadline set forth in sections 102.111 and 102.112 under the circumstances presented.

VI. AMENDED RETURNS

A. Statutory Ambiguity
In regard to this case, the provisions of the Code are ambiguous in the following areas. First, the deadline for submitting county returns to the Department under sections 102.111 and 102.112 is in conflict with the time frame for conducting manual recounts under section 102.166(4).[13] Second, the language in sections 102.111 and 102.112, authorizing the Secretary to ignore amended or late returns submitted by the Boards, is contradictory.

1. The Recount Conflict

Section 102.166(1) states that "[a]ny candidate for nomination or election, or any elector qualified to vote in the election related to such candidacy, shall have the right to protest the returns of the election as being erroneous by filing with the appropriate canvassing board a sworn, written protest." The time period for filing a protest is "prior to the time the canvassing board certifies the results for the office being protested or within 5 days after midnight of the date the election is held, whichever occurs later." § 102.166(2), Fla. Stat. (2000).
Section 102.166(4)(a), the operative subsection in this case, further provides that, in addition to any protest, "any candidate whose name appeared on the ballot ... or any political party whose candidates' names appeared on the ballot may file a written request with the county canvassing board for a manual recount" accompanied by the "reason that the manual recount is being requested." Section *1285 102.166(4)(b) further provides that the written request may be made prior to the time the Board certifies the returns or within seventy-two hours after the election, whichever occurs later:[14]
(4)(a) Any candidate whose name appeared on the ballot, any political committee that supports or opposes an issue which appeared on the ballot, or any political party whose candidates' names appeared on the ballot may file a written request with the county canvassing board for a manual recount. The written request shall contain a statement of the reason the manual recount is being requested.
(b) Such request must be filed with the canvassing board prior to the time the canvassing board certifies the results for the office being protested or within 72 hours after midnight of the date the election was held, whichever occurs later.

§ 102.166, Fla. Stat. (2000) (emphasis added).
A Board "may" authorize a manual recount[15] and such a recount must include at least three precincts and at least one percent of the total votes cast for the candidate.[16] The following procedure then applies:
(5) If the manual recount indicates an error in the vote tabulation which could affect the outcome of the election, the county canvassing board shall:
(a) Correct the error and recount the remaining precincts with the vote tabulation system;
(b) Request the Department of State to verify the tabulation software; or
(c) Manually recount all ballots.
(6) Any manual recount shall be open to the public.
(7) Procedures for a manual recount are as follows:
(a) The county canvassing board shall appoint as many counting teams of at least two electors as is necessary to manually recount the ballots. A counting team must have, when possible, members of at least two political parties. A candidate involved in the race shall not be a member of the counting team.
(b) If a counting team is unable to determine a voter's intent in casting a ballot, the ballot shall be presented to the county canvassing board for it to determine the voter's intent.
§ 102.166, Fla. Stat. (2000).
Under this scheme, a candidate can request a manual recount at any point prior to certification by the Board and such action can lead to a full recount of all the votes in the county. Although the Code sets no specific deadline by which *1286 a manual recount must be completed, the time required to complete a manual recount must be reasonable.[17] Otherwise, the recount provision would be, in effect, meaningless. Courts should construe statutes to give effect to all provisions, and not to render any part meaningless. See Unruh v. State, 669 So.2d 242, 245 (Fla.1996). The recount provision thus conflicts with sections 102.111 and 102.112, which state that the Boards "must" submit their returns to the Elections Canvassing Commission by 5 p.m. of the seventh day following the election or face penalties. For instance, if a party files a precertification protest on the sixth day following the election and requests a manual recount and the initial manual recount indicates that a full countywide recount is necessary, the recount procedure in most cases could not be completed by the deadline in sections 102.111 and 102.112, i.e., by 5 p.m. of the seventh day following the election.

2. The "Shall" Versus "May" Conflict

Section 102.111, which sets forth general criteria governing the Elections Canvassing Commission, was enacted in 1951 as part of the Code and provides that late returns "shall" be ignored:
102.111 Elections Canvassing Commission.
(1) Immediately after certification of any election by the county canvassing board, the results shall be forwarded to the Department of State concerning the election of any federal or state officer. The Governor, the Secretary of State, and the Director of the Division of Elections shall be the Elections Canvassing Commission. The Elections Canvassing Commission shall, as soon as the official results are compiled from all counties, certify the returns of the election and determine and declare who has been elected for each office. In the event that any member of the Elections Canvassing Commission is unavailable to certify the returns of any election, such member shall be replaced by a substitute member of the Cabinet as determined by the Director of the Division of Elections. If the county returns are not received by the Department of State by 5 p.m. of the seventh day following an election, all missing counties shall be ignored, and the results shown by the returns on file shall be certified.
§ 102.111, Fla. Stat. (2000) (emphasis added).
The Legislature in 1989 revised chapter 102 to include section 102.112, which provides that late returns "may" be ignored and that members of the County Board "shall" be fined:
102.112 Deadline for submission of county returns to the Department of State; penalties.
(1) The county canvassing board or a majority thereof shall file the county returns for the election of a federal or state officer with the Department of State immediately after the certification of the election results. Returns must be filed by 5 p.m. on the 7th day following the first primary and general election and by 3 p.m. on the 3rd day following the second primary. If the returns are not received by the department by the time specified, such returns may be ignored and the results on file at that time may be certified by the department.
(2) The department shall fine each board member $200 for each day such returns are late, the fine to be paid only from the board member's personal funds. Such fines shall be deposited into the Election Campaign Financing Trust fund, created by s. 106.32.

*1287 (3) Members of the county canvassing board may appeal such fines to the Florida Elections Commission, which shall adopt rules for such appeals.
§ 102.112, Fla. Stat. (2000) (emphasis added).
The above statutes conflict. Whereas section 102.111 is mandatory (i.e., the Department "shall" ignore late returns), section 102.112 is permissive (i.e., the Department "may" ignore late returns, or the Department "may" certify late returns and fine tardy Board members).

B. Resolving the Ambiguity

1. The Recount Conflict

It is well settled that a statute should be construed in its entirety and as a harmonious whole. See, e.g., Sun Ins. Office, Ltd. v. Clay, 133 So.2d 735 (Fla.1961). Further, where two laws are in conflict, courts should adopt an interpretation that harmonizes the laws, for the Legislature is presumed to have intended that both laws are to operate coextensively and have the fullest possible effect. See T.R. v. State, 677 So.2d 270 (Fla.1996). In the present case, whereas sections 102.111 and 102.112 state that County Boards must submit vote returns to the Department by 5 p.m. of the seventh day following an election, section 102.166(4) provides that a manual recount can be requested at any point prior to certification. Manual recounts oftentimes may be incomplete on the seventh day following the election. In such a case, if the seven-day limit were to be strictly enforced, the manual recount provision would be eviscerated and rendered meaningless. The Legislature could not have intended such a result. The seven-day limit thus must be construed in a flexible manner to accommodate the manual recount provision.

2. The "Shall" Versus "May" Conflict

First, it is well settled that where two statutory provisions are in conflict, the specific statute controls the general statute. See, e.g., State ex rel. Johnson v. Vizzini, 227 So.2d 205 (Fla.1969). In the present case, whereas section 102.111 in its title and text addresses the general makeup and duties of the Elections Canvassing Commission, the statute only tangentially addresses the penalty for late returns, noting that such returns "shall" be ignored by the Department. Section 102.112, on the other hand, directly addresses in its title and text both the "deadline" for submitting returns and the "penalties" for submitting late returns; the statute expressly states that late returns "may" be ignored and that dilatory Board members "shall" be fined. Based on the precision of the title and text, section 102.112 constitutes a specific penalty statute that defines both the deadline for filing returns and the penalties for filing late returns, and section 102.111 constitutes a nonspecific statute in this regard. The specific statute controls the nonspecific statute.
Second, it also is well settled that when two statutes are in conflict, the more recently enacted statute controls the older statute. See McKendry v. State, 641 So.2d 45 (Fla.1994). In the present case, the provision in section 102.111 stating that the Department "shall" ignore late returns was enacted in 1951 as part of the Code. On the other hand, the penalty provision in section 102.112 stating that the Department "may" ignore late returns was enacted in 1989 as a revision to chapter 102. The more recently enacted provision may be viewed as the clearest and most recent expression of legislative intent.
Third, related statutory provisions must be read as a cohesive whole. See Sun Ins. Office, Ltd. v. Clay, 133 So.2d 735 (Fla.1961). A statutory provision will not be construed in such a way that it renders meaningless or absurd any other statutory provision. See Amente v. Newman, 653 So.2d 1030 (Fla.1995). As stated in Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla. 1992), "all parts of a statute must be read together in order to achieve a consistent *1288 whole. Where possible, courts must give effect to all statutory provisions and construe related statutory provisions in harmony with another."
Section 102.166 states that a candidate, political committee, or political party may request a manual recount any time before the county canvassing board certifies the results to the Department and, if the initial manual recount indicates a significant error, the Board "shall" conduct a countywide manual recount in certain cases. Thus, if a request is filed on the sixth day following an election and a full manual recount is required, the Board, through no fault of its own, will be unable to submit its returns to the Department by 5 p.m. of the seventh day following the election. In such a case, if the mandatory provision in section 102.111 were given effect, the votes of the county would be ignored for the simple reason that the Board was following the dictates of a different section of the Code. The Legislature could not have intended to penalize county canvassing boards for following the dictates of the Code.
And finally, when the Legislature enacted the Code, it envisioned that all votes cast during a particular election, including absentee ballots, would be submitted to the Department at one time. This, of course, is not possible because our state statutory scheme has been superseded by federal law governing overseas voters;[18] overseas ballots must be counted if received no later than ten days following the election (i.e., the ballots do not have to be received by 7 p.m. of the day of the election, as provided by state law). In light of the fact that overseas ballots cannot be counted until after the seven-day deadline has expired, the mandatory language in section 102.111 has been supplanted by the permissive language of section 102.112. As reflected in a consent decree between the State of Florida and the United States Government, federal law requires counties to amend their returns to include overseas ballot totals and requires the Department to accept these totals.[19] The overseas ballots must be received by counties up until midnight on the tenth day following the election. In the present election, the earliest the county canvassing boards could have filed amended returns reflecting the overseas ballot totals was Saturday, November 18, 2000. The Secretary indicated that after receiving and totaling these amended returns, the Elections Canvassing Commission would certify the election on Saturday, November 18, 2000.

VII. THE DEPARTMENT'S DISCRETION
Consistent with the analysis above, we conclude that section 102.112 grants the Department discretion to ignore returns not received by the time specified in the statute. However, a plain reading of section 102.112 does not set forth boundaries of the exercise of this discretion. This case is not about whether there is a 5 p.m. deadline for filing returns. There is such a deadline. The trial court enforced that deadline and all county canvassing boards met that deadline. This case is about the "may ignore" portion of the statute and whether the Department acted within its discretion when the Secretary of State anticipatorily announced that *1289 she would not accept any amendments to the returns which had met the deadline thereby announcing that amended returns filed after the 5 p.m. deadline were to be ignored.
In a statewide or federal election other than a presidential election we can foresee no reason why the Department would refuse to accept amended returns if a county was proceeding in good faith with a manual recount under section 102.166. However, in this case involving a presidential election, the decision as to when amended returns can be excluded from the statewide certification must necessarily be considered in conjunction with the contest provisions of section 102.168 and the deadlines set forth in 3 U.S.C. § 5. Therefore, in this case involving a presidential election, we conclude that the reasoned basis for the exercise of the Department's discretion to ignore amended returns is limited to those instances where failure to ignore the amended returns will: (1) preclude a candidate, elector, or taxpayer from contesting the certification of an election pursuant to section 102.168;[20] or (2) in the case of a federal election, will result in Florida voters not participating fully in the federal electoral process, as provided in 3 U.S.C. § 5.

VIII. THE PRESENT CASE
Based on the foregoing, we hold that the trial court below properly concluded that the county canvassing boards were required to submit their returns to the Department by 5 p.m. of the seventh day following the election and that the Department was not required to ignore the amended returns but rather could count them. The court, however, erred in holding that the Secretary acted within her discretion in prematurely rejecting any amended returns that would be the result of ongoing manual recounts. The Secretary's rationale for rejecting the Board's returns was as follows:
The Board has not alleged any facts or circumstances that suggest the existence of voter fraud. The Board has not alleged any facts or circumstances that suggest that there has been substantial noncompliance with the state's statutory election procedures, coupled with reasonable doubt as to whether the certified results expressed the will of the voters. The Board has not alleged any facts or circumstances that suggest that Palm Beach County has been unable to comply with its election duties due to an act of God, or other extenuating circumstances that are beyond its control. The Board has alleged the possibility that the results of the manual recount could affect the outcome of the election if certain results obtain. However, absent an assertion that there has been substantial noncompliance with the law, I do not believe that the possibility of affecting the outcome of the election is enough to justify ignoring the statutory deadline. Furthermore, I find that the facts and circumstances alleged, standing alone, do not rise to the level of extenuating circumstances that justify a decision on my part to ignore the statutory deadline imposed by the Florida Legislature.
Letter from Katherine Harris to Palm Beach Canvassing Board (Nov. 15, 2000)(emphasis added).
We conclude that, consistent with the Florida election scheme, the Department may not reject a Board's amended returns that are filed on or before the day after the date that the overseas ballots are due. Such a rejection constitutes a clear abuse of discretion, as the Elections Canvassing Commission cannot certify the election prior to that date. Further, as set forth above, in this case involving a presidential election, the reasoned basis for the exercise of the Department's discretion to *1290 ignore amended returns after November 18, 2000, is limited to those instances where failure to ignore the amended returns will: (1) preclude a candidate, elector, or taxpayer from contesting the certification of an election pursuant to section 102.168; or (2) in the case of a federal election, result in Florida voters not participating fully in the federal electoral process, as provided in 3 U.S.C. § 5. In this case, as of the date that the Secretary rejected the amended returns on November 14, 2000, the deadline for receiving overseas ballots had not expired and neither of the circumstances set forth above had been considered.
Further, in this case, the Department applied its discretion in accord with a faulty premise: that an "error in vote tabulation" does not include a situation where a discrepancy between the original machine return and sample recount is due to the manner in which a ballot has been marked or punched. See Advisory Opinion DE 00-13. Accordingly, the Department did not exercise its discretion within the confines of the law. As a result of this opinion, Palm Beach County, and potentially other counties, were thwarted in their efforts to complete the manual recount. In this Court's original opinion, we granted a remedy which, in effect, put the parties in the same position they would have been at the time the Division issued its advisory opinion on Monday, November 13, 2000.[21] Prior to the Division's opinion, the counties had at least until Saturday, November 18 to complete the manual recounts and certify the amended results. This Court released its original opinion on Tuesday, November 21, 2000. The November 26, 2000, date gave the counties no more time to complete the recount than they would have had if the Division had not forestalled their efforts. The November 26, 2000, date was not a new "deadline" and has no effect in future elections.[22] It was simply a date in accordance with the requirements that had been established prior to the election and in order to construe all the provisions of the Code as a consistent whole.

IX. CONCLUSION
As is evident from the nature of the actual issue certified by the district court as one of great public importance requiring this Court's immediate attention, this Court has at all times been faced with a question of the statutory construction of Florida's election laws in accord with the intent of the Florida Legislature. Our examination of that issue has been limited to a determination of legislative intent as informed by the traditional sources and rules of construction we have long accepted as relevant in determining such intent. Not surprisingly, we have identified the right of Florida's citizens to vote and to have elections determined by the will of Florida's voters as important policy concerns of the Florida Legislature in enacting Florida's election code.
It is important, perhaps, to remind ourselves that the Florida Legislature has expressly vested in the voters of Florida the authority to elect the presidential electors who will ultimately participate in choosing a president:
Electors of President and Vice President, known as presidential electors, *1291 shall be elected on the first Tuesday after the first Monday in November of each year the number of which is a multiple of 4. Votes cast for the actual candidates for President and Vice President shall be counted as votes cast for the presidential electors supporting such candidates. The Department of State shall certify as elected the presidential electors of the candidates for President and Vice President who receive the highest number of votes.
§ 103.011, Fla. Stat. (2000). By providing for the popular election of presidential electors, Florida's Legislature has also placed that election under Florida's general statutory election scheme. Hence, there is essentially only one statutory election scheme for all elections whether the elections be for local and state officials or for presidential electors. The Legislature has not chosen to have a separate set of election laws for elections for presidential electors. The Legislature has chosen to have a single election code control all elections. So, we must interpret and apply that single election code here.
As a consequence of having a single election code for all elections, it should not be surprising to anyone to learn that these laws will be applied in most instances to elections other than those for presidential electors. For example, it is apparent that the court cases that have previously construed the election laws generally have involved state and local elections. It should not be surprising then that this Court's prior opinions that we have relied on for guidance in resolving the pending issue of statutory construction would have little reference to the Legislature's authority in the selecting of presidential electors or the Legislature's decision to grant Florida voters the right to elect presidential electors. In fact, the parties have provided us no citations to court cases in Florida involving disputes over presidential electors under Florida's election laws. This case may be the first.
In sum, Florida's statutory scheme simply makes no provision for applying its rules one way for presidential elector elections and another way for all other elections. That was a legislative decision that we have accepted. The importance of the single scheme becomes apparent when we consider the issue of the timetable for filing election returns in all elections where returns must be filed according to the statutory schedule. We have construed the provisions providing for a timetable as directory in light of what we perceive to be a clear legislative policy of the importance of an elector's right to vote and of having each vote counted. Hopefully, our unbroken line of cases identifying and relying on these legislative policies has not missed the mark. Further, if anything, more recent legislative changes have been crafted not only to be consistent with these policies, but also to ensure adherence to them.
Hence, based upon our perception of legislative intent, we have ruled that election returns must be accepted for filing unless it can clearly be determined that the late filing would prevent an election contest or the consideration of Florida's vote in a presidential election. This statutory construction reflects our view that the Legislature would not wish to endanger Florida's vote being counted in a presidential election. This ruling is not only consistent with our prior interpretation of the entire statutory election scheme, but also with our identification of the important legislative policies underlying that scheme.
For the reasons stated in this opinion, we reverse the orders of the trial court. Based on this Court's status as the ultimate arbiter of conflicting Florida law, we conclude that our construction of the above statutes results in the formation of no new rules of state law but rather results simply in a narrow reading and clarification of those statutes, which were enacted long before the present election took place. We decline to rule more expansively in the present case, for to do so would result in *1292 this Court substantially rewriting the Code. We leave that matter to the sound discretion of the body best equipped to address it, the Legislature.
No motion for rehearing will be allowed.
It is so ordered.
SHAW, HARDING, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
WELLS, C.J., dissents with an opinion.
WELLS, C.J., dissenting.
I dissent from issuing a new decision while the United States Supreme Court has under consideration Bush v. Gore, ___ U.S. ___, 121 S.Ct. 512, 148 L.Ed.2d 553 (2000), and I do not concur in the reissued opinion.
NOTES
[1] See Bush v. Palm Beach Canvassing Bd., 69 U.S.L.W. 4020 (2000).
[2] In its December 4, 2000, opinion and mandate, the Supreme Court of the United States remanded this case for further proceedings. On December 4, 2000, this Court entered its order authorizing all parties to file supplemental briefs directed to the implementation of the mandate, and briefs were filed on December 5, 2000, and considered by the Court. In the interim, this Court received briefs and conducted oral argument on December 7, 2000, in the case of Gore v. Harris, 772 So.2d 1243 (Fla.2000), which also required immediate attention. We thereafter rendered our decision on December 8, 2000, which is presently under review by the Supreme Court of the United States. While recognizing the dissent in this case does not agree with release of this opinion at this time, we have issued this decision as expeditiously as possible under the foregoing time constraints in order to timely respond to the questions presented by the Supreme Court of the United States in the December 4, 2000, opinion and its remand instructions.
[3] See § 102.141(4), Fla. Stat.(2000).
[4] The criteria considered by the Secretary are as follows:

Facts & Circumstances Warranting Waiver of Statutory Deadline
1. Where there is proof of voter fraud that affects the outcome of the election. In re Protest of Election Returns, 707 So.2d 1170, 1172 (Fla. 3d DCA 1998); Broward County Canvassing Bd. v. Hogan, 607 So.2d 508, 509 (Fla. 4th DCA 1992).
2. Where there has been a substantial noncompliance with statutory election procedures, and reasonable doubt exists as to whether the certified results expressed the will of the voters. Beckstrom v. Volusia County Canvassing Bd., 707 So.2d 720 (Fla. 1998).
3. Where election officials have made a good faith effort to comply with the statutory deadline and are prevented from timely complying with their duties as a result of an act of God, or extenuating circumstances beyond their control, by way of example, an electrical power outage, a malfunction of the transmitting equipment, or a mechanical malfunction of the voting tabulation system. McDermott v. Harris, No. 00-2700, 2000 WL 1693713 (Fla.2d Cir.Ct. Nov. 14, 2000).
Facts & Circumstances Not Warranting Waiver of Statutory Deadline
1. Where there has been substantial compliance with statutory election procedures and the contested results relate to voter error, and there exists a reasonable expectation that the certified results expressed the will of the voters. Beckstrom v. Volusia County Canvassing Bd., 707 So.2d 720 (Fla.1998).
2. Where there exists a ballot that may be confusing because of the alignment and location of the candidates' names, but is otherwise in substantial compliance with the election laws. Nelson v. Robinson, 301 So.2d 508, 511 (Fla. 2d DCA 1974) ("[M]ere confusion does not amount to an impediment to the voters' free choice if reasonable time and study will sort it out.").
3. Where there is nothing "more than a mere possibility that the outcome of the election would have been effected." Broward County Canvassing Bd. v. Hogan, 607 So.2d 508, 510 (Fla. 4th DCA 1992).
Letter from Katherine Harris to Palm Beach County Canvassing Board (Nov. 15, 2000).
[5] See Palm Beach County Canvassing Bd. v. Harris, 772 So.2d 1220 (Fla.2000).
[6] The United States Supreme Court ruled as follows:

After reviewing the opinion of the Florida Supreme Court, we find "that there is considerable uncertainty as to the precise grounds for the decision." This is sufficient reason for us to decline at this time to review the federal questions asserted to be present.... Specifically, we are unclear as to the extent to which the Florida Supreme Court saw the Florida Constitution as circumscribing the legislature's authority under Art. II, § 1, cl. 2. We are also unclear as to the consideration the Florida Supreme Court accorded to 3 U.S.C. § 5. The judgment of the Supreme Court of Florida is therefore vacated, and the case is remanded for further proceedings not inconsistent with this opinion.
Bush v. Palm Beach County Canvassing Bd., 69 U.S.L.W. 4020, 4021 (2000) (citation omitted).
[7] None of the parties have raised as an issue on appeal the constitutionality of Florida's election laws.
[8] § 102.166(4)(b), Fla. Stat. (2000).
[9] § 102.166(4)(c), Fla. Stat. (2000).
[10] See Broward County Canvassing Bd. v. Hogan, 607 So.2d 508, 510 (Fla. 4th DCA 1992).
[11] See § 102.166(4)(d), Fla. Stat. (2000).
[12] The Commission is composed of the Secretary of State, the Director of the Division of Elections, and the Governor. See § 102.111, Fla. Stat. In this instance, Florida Governor Jeb Bush has removed himself from the Commission because his brother, Texas Governor George W. Bush, is the Republican candidate for President of the United States. Robert Crawford, Florida Commissioner of Agriculture, has been appointed to replace Florida Governor Jeb Bush. See § 102.111, Fla. Stat. (2000).
[13] We emphasize that because the certification of the Elections Canvassing Commission and the deadlines in sections 102.111 and 102.112 apply only in the case of statewide and federal elections, the conflict between the two statutes exists only for those elections and not for local or county elections.
[14] As discussed in Siegel v. LePore, 120 F.Supp.2d 1041, 1050 (S.D.Fla.2000), aff'd, 234 F.3d 1163 (11th Cir. 2000):

On its face, the manual recount provision does not limit candidates access to the ballot or interfere with voters' right to associate or vote. Instead the manual recount provision is intended to safeguard the integrity and reliability of the electoral process by providing a structural means of detecting and correcting clerical or electronic tabulating errors in the counting of election ballots. While discretionary in its application, the provision is not wholly standardless. Rather, the central purpose of the scheme, as evidenced by its plain language, is to remedy "an error in the vote tabulation which could affect the outcome of the election." Fla. Stat. § 102.166(5). In this pursuit, the provision strives to strengthen rather than dilute the right to vote by securing, as nearly as humanly possible, an accurate and true reflection of the will of the electorate. Notably, the four county canvassing boards [that were] challenged in this suit have reported various anomalies in the initial automated count and recount. The state manual recount provision therefore serves important governmental interests.
[15] The statute does not set forth any criteria for determining when a manual recount is appropriate. See § 102.166(4)(c), Fla. Stat. (2000) ("The county canvassing board may authorize a manual recount.").
[16] § 102.166(4)(d), Fla. Stat. (2000).
[17] What is a reasonable time required for completion will, in part, depend on whether the election is for a statewide office, for a federal office, or for presidential electors. In the case of the presidential election, the determination of reasonableness must be circumscribed by the provisions of 3 U.S.C. § 5, which sets December 12, 2000, as the date for final determination of any state's dispute concerning its electors in order for that determination to be given conclusive effect in Congress.
[18] See Fla. Admin. Code R.1S-2.013 (1998).
[19] See United States v. Florida, No. TCA-80-1055 (N.D.Fla. Aug. 20, 1984). Accordingly, Florida Administrative Code Rule 1S-2.013 provides in relevant part:

(7) With respect to the presidential preference primary and the general election, any absentee ballot cast for a federal office by an overseas elector which is postmarked or signed and dated no later than the date of the Federal election shall be counted if received no later than 10 days from the date of the Federal election so long as such absentee ballot is otherwise proper. Overseas electors shall be informed by the supervisors of elections of the provisions of this rule, i.e., the ten day extension provision for the presidential preference primary and the general election, and the provision for voting for the second primary.
[20] In this case, the parties conceded that the contest provisions contained in section 102.168 apply to presidential elections.
[21] At oral argument in this case, we inquired as to whether the presidential candidates were interested in our consideration of a reopening of the opportunity to request manual recounts in all counties. Neither candidate requested such an opportunity.
[22] We add that we did not extend the deadline for completion of the manual recounts but made clear only that the date for certification must be set within a reasonable time to allow for the election contest provisions of section 102.168. As always, it is necessary to read all provisions of the elections code in pari materia. In this case, that comprehensive reading required that there be time for an elections contest pursuant to section 102.168, which all parties had agreed was a necessary component of the statutory scheme and to accommodate the outside deadline set forth in 3 U.S.C. § 5 of December 12, 2000.