932 So.2d 1195 (2006)
DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Appellant,
v.
P.S.: In the Interest of C.S., G.S. and M.S., Appellee.
No. 1D05-4421.
District Court of Appeal of Florida, First District.
July 3, 2006.
*1197 Joann M. Humburg, Attorney Supervisor, Lake City, for Appellant.
Donald K. Rudser, Jasper, for Appellee.
BROWNING, J.
The Florida Department of Children & Family Services (Department) appeals the circuit court's final judgment of adoption, which allowed the minor children, C.S., G.S., and M.S., to be adopted by their paternal grandmother, P.S. (formerly known as P.C.). The Department contends that the trial court reversibly erred in allowing an out-of-state relative to adopt these children (whose parental rights previously had been terminated) without statutory findings and a favorable preliminary adoptive home study being done and filed with the petition for adoption. Having determined that the trial court misconstrued and misapplied the pertinent statutes in granting the paternal grandmother's petition for adoption, we reverse the final judgment of adoption and remand for further proceedings consistent with the opinions expressed herein.

FACTS
In August 2003, while dependency proceedings were ongoing in Suwannee County, Florida, pursuant to chapter 39, Florida Statutes (2003), the three children were placed in the physical care and custody of their paternal grandparents and have continuously remained with them. When the grandparents and the three children moved to Georgia, the Department (as required by law) requested an Interstate Compact for the Placement of Children (ICPC) home study. On August 21, 2003, the Department filed the State of Georgia's response to the Department's request for a home study. The Georgia Department of Human Resources' response neither "approved" nor "disapproved" the paternal grandmother as a permanent placement option. Instead, the Georgia Department stated:
At this time all we can recommend is that [the paternal grandmother] be considered as a placement resource for [the three grandchildren], but due to concerns with [the paternal grandmother's] stability we cannot approve change of custody or assignment of guardianship for these children. We request a minimum 6 month supervisory period in order to monitor this placement and assure that stability will be maintained.
Subsequently, the three children's parents signed voluntary surrenders, and their parental rights were terminated. See § 39.811, Fla. Stat. (2003). On June 7, 2004, the children were committed by court order to the Department's permanent custody for purposes of adoption. See §§ 39.622 & 39.812, Fla. Stat. (2004). In mid-2004, the Georgia Department voiced "many concerns" about the children's safety and welfare, supported by specific written allegations, which were reported to the trial court in Florida. Given these ongoing concerns, and pursuant to the request of the Georgia family service workers (sent through the Florida office of the ICPC), the Department asked the trial court to remove the children from the paternal grandmother's custody. Specifically, the Department presented the court *1198 with documentation, notes, and testimony of the Georgia case workers expressing their serious concerns.
On August 30, 2004, the trial court denied the request to remove the children, terminated the Department's protective supervision of them, and left the children in the long-term custody of the paternal grandmother in Georgia.[1]
On April 12, 2005, the paternal grandmother filed a petition to adopt the three children, supported by her affidavit, based on the termination of the children's parental rights. The paternal grandmother did not file a preliminary favorable adoptive home study with her petition for adoption. The only home evaluation conducted on the paternal grandmother and the three children was the previously mentioned one, which was tentative at best. No adoptive home study had been sought or conducted. At the hearing on the petition for adoption, the Department was made a party to the adoption proceedings. The Department presented oral and written objections to the trial court's granting the petition where proper statutory procedures had not been followed.
On June 15, 2005, the trial court sua sponte entered a "Corrected Order Terminating Parental Rights," which did not alter its ruling terminating the parental rights under chapter 39, but "revoked" the language permanently committing the three children to the Department for purposes of subsequent adoption, and reaffirmed the previous placement of the children in the long-term relative custody of their paternal grandmother.
On July 12, 2005, the trial court entered an order "granting" the adoption; a final judgment of adoption was entered subsequently. The Department moved for a rehearing, requested that the trial court require the paternal grandmother to obtain a favorable preliminary adoptive home study before the adoption was granted, and asked the court to stay the children's adoption until the home study could be reviewed by the Department and by the court. The trial court denied rehearing but agreed to stay the adoption pending the Department's filing this direct appeal.

LAW
We have de novo review of issues involving the interpretation of statutes. See Dep't of Revenue v. Lockheed Martin Corp., 905 So.2d 1017, 1020 (Fla. 1st DCA 2005). The starting point in determining what procedures are to be followed under Florida law relating to post-termination adoptions is section 63.037, Florida Statutes (2005), which states:
63.037 Proceedings applicable to cases resulting from a termination of parental rights under chapter 39.
A case in which a minor becomes available for adoption after the parental rights of each parent have been terminated by a judgment entered pursuant to chapter 39 shall be governed by s. 39.812 and this chapter. Adoption proceedings initiated under chapter 39 are exempt from the following provisions of this chapter: disclosure requirements for the adoption entity provided in s. 63.085; general provisions governing termination of parental rights pending adoption provided in s. 63.087; notice and service provisions governing termination of parental rights pending adoption provided in s. 63.088; and procedures for terminating parental rights pending adoption provided in s. 63.089.
The children's parental rights were terminated by judgment entered pursuant to chapter 39, Florida Statutes. Thus, by the *1199 express terms of section 63.037, Florida Statutes, this case "shall be governed by s. 39.812 and this chapter [63]." Another provision in chapter 63, Florida Statutes, addresses persons required to consent to adoption. The statutory language is as follows:
63.062 Persons required to consent to adoption; affidavit of nonpaternity; waiver of venue. 
* * *
(7) If parental rights to the minor have previously been terminated, the adoption entity with which the minor has been placed for subsequent adoption may provide consent to the adoption. In such case, no other consent is required. The consent of the department shall be waived upon a determination by the court that such consent is being unreasonably withheld, provided that the petitioner has filed with the court a favorable preliminary adoptive home study performed by a licensed child-placing agency, a child-caring agency registered under s. 409.176, or a licensed professional or agency described in s. 61.20(2).
§ 63.062(7), Fla. Stat. (2005). In its June 7, 2004, order, after the parental rights were terminated, the trial court committed the children to the Department's permanent custody for purposes of adoption. Therefore, under the express terms of section 63.062(7), the Department, being the adoption entity with which the children were placed for subsequent adoption, could provide consent to the adoption, whereupon no other consent would be required. In the case at bar, the Department not only refused to consent to the children's adoption by their paternal grandmother, but also filed objections to the adoption proceedings continuing without a favorable home study. The Department's consent is waived upon the trial court's determination that consent is being unreasonably withheld, but no such determination was made by the court. Even had such a determination of unreasonably withheld consent been made by the court, the statute waives the Department's consent, "provided that the petitioner has filed with the court a favorable preliminary adoptive home study performed by a licensed child-placing agency, a child-caring agency registered under s. 409.176, or a licensed professional or agency described in s. 61.20(2)." The Department correctly contends that neither one of the two requirements for a waiver of Department's consent was satisfied in this case.
The express language in section 63.037 directs us not only to the other governing provisions in chapter 63, but also to section 39.812, Florida Statutes, which specifically addresses the petition for adoption. One of its subsections states:
39.812 Postdisposition relief; petition for adoption. 
* * *
(5) The petition for adoption must be filed in the division of the circuit court which entered the judgment terminating parental rights, unless a motion for change of venue is granted pursuant to s. 47.122. A copy of the consent executed by the department as required under s. 63.062(7) must be attached to the petition, unless the court determines that such consent is being unreasonably withheld and provided that the petitioner has filed with the court a favorable preliminary adoptive home study performed by a licensed child-placing agency, a child-caring agency registered under s. 409.176, or a licensed professional or agency described in s. 61.20(2). The petition must be accompanied by a form provided by the department which details the social and medical history of the child and each parent and includes the social security number and date of birth *1200 for each parent, if such information is available or readily obtainable. The person seeking to adopt the child may not file a petition for adoption until the judgment terminating parental rights becomes final. An adoption proceeding under this subsection is governed by chapter 63, as limited under s. 63.037.
§ 39.812(5), Fla. Stat. (2005). When the petition for adoption is filed in the circuit court, this statutory subsection expressly requires a copy of the consent executed by the Department pursuant to section 63.062(7), supra, to be attached to the petition "unless the court determines that such consent is being unreasonably withheld and provided that the petitioner has filed with the court a favorable preliminary adoptive home study performed" by a qualified entity. In other words, sections 63.062(7) and 39.812(5) include virtually identical requirements addressing the Department's consent or, if it is not given, the court's finding that the withholding of consent is unreasonable. Consent is waived only if the petitioner has filed the requisite favorable preliminary adoptive home study. Because the Department refused to execute a consent for attachment to the petition for adoption, these parallel statutes provide that the only remaining option was for the trial court to determine that such consent was being unreasonably withheld (which was not done), and for the petitioner to file with the court a favorable preliminary adoptive home study (which was not done).
The trial court reasoned that, notwithstanding the express requirements of section 63.037, Florida Statutes, supra, the provisions of section 39.812 do not apply in this case because the Department was not given custody of these children for subsequent adoption and the Department's consent is not required. Even assuming (without having to decide) that the trial court properly "revoked" its earlier ruling permanently committing the three children to the Department for purposes of subsequent adoption, we find nothing in the applicable statutes or in the case law supporting the conclusion that the children's adoption by the paternal grandmother could proceed to finality without either the Department's consent or the trial court's determination of unreasonably withheld consent and the filing of a favorable preliminary adoptive home study.
Because the trial court approved the children's adoption by their paternal grandmother without complying with these statutory requirements, we are constrained to reverse the final judgment of adoption and to remand for further proceedings in accordance with the pertinent statutes. Chapter 39, "Proceedings Relating to Children," is suffused with clear legislative expressions of concern for children's best interests and overall well-being. See, e.g., § 39.001(1)(a), Fla. Stat. (2005) (stating the purposes of this chapter are "[t]o provide for the care, safety, and protection of children in an environment that fosters healthy social, emotional, intellectual, and physical development; to ensure secure and safe custody; and to promote the health and well-being of all children under the state's care"); § 39.001(3); § 39.810 (pertaining to proceedings to terminate parental rights and requiring the trial court to consider "the manifest best interests of the child"); see B.Y. v. Dep't of Children & Families, 887 So.2d 1253, 1255-56 (Fla.2004) (recognizing the Department's important role in achieving these salutary goals). Likewise, the statutory chapter dealing with adoption recognizes "[t]he state has a compelling interest in providing stable and permanent homes for adoptive children in a prompt manner . . . ." § 63.022(1)(a), Fla. Stat. (2005); see § 63.022(2) (articulating legislative intent "that in every adoption, *1201 the best interest of the child should govern and be of foremost concern in the court's determination").
The purpose of the adoptive home study is to assist the Department in making an informed recommendation and to allow the trial court to make an informed decision about permanent placements for children. Under the interpretation of the Florida statutes made by the trial court, these children can be adopted without the Department's consent  in fact, over its strong objection  and without a favorable preliminary adoptive home study performed by an appropriate entity, simply because the petitioner is a relative. The trial court noted that section 63.112(2)(b), Florida Statutes (2005), states that the favorable preliminary home study must be filed with the clerk of the court when the petition for adoption is filed "unless the petitioner is a stepparent or a relative." Subsection (3) of this same provision states:
Unless ordered by the court, no report or recommendation is required when the placement is a stepparent adoption or an adult adoption or when the minor is a relative of one of the adoptive parents.
The Department correctly observes that the trial court based its ruling, in large measure, on the language in section 63.112(2)(b) & (3) stating that the favorable preliminary home study made by an appropriate entity is required to be filed with the clerk of the court when the petition is filed "unless the petitioner is a . . . relative"; and that unless the trial court orders it, no report or recommendation is required "when the minor is a relative of one of the adoptive parents." This language in one provision of the "Adoption" chapter renders meaningless the provisions in another provision, section 63.062(7), supra, as well as in chapter 39, governing "Proceedings Relating to Children," which specifically address those cases, like the case at bar, in which the children's parental rights have been terminated before adoption proceedings commenced. As we have noted above, in these post-termination cases, the adoption entity where the children have been placed for subsequent adoption "may provide consent to the adoption," in which case "no other consent is required." § 63.062(7), Fla. Stat. (2005). Where the Department refuses to give consent, such consent can be waived upon the court's finding of unreasonable withholding of consent, but only if the petitioner has filed with the court a favorable preliminary adoptive home study performed by a qualified entity. See §§ 39.812(5) & 63.062(7), Fla. Stat. (2005). No other method of waiving consent is stated or implied in the relevant statutes. Had it intended to do so, the Legislature easily could have stated in section 63.062(7) that the Department's consent to the adoption is waived if the court makes a finding of unreasonably withheld consent and the petitioner is a relative. The Legislature did not do so.
"It is well settled that a statute should be construed in its entirety and as a harmonious whole. . . . Further, where two laws are in conflict, courts should adopt an interpretation that harmonizes the laws, for the Legislature is presumed to have intended that both laws are to operate coextensively and have the fullest possible effect." Palm Beach County Canvassing Bd. v. Harris, 772 So.2d 1273, 1287 (Fla. 2000). Sections 63.062(7) and 63.112(2)(b) & (3) can be read in pari materia by applying the latter provisions only to those cases in which the children's parental rights were not terminated under chapter 39. The Legislature's recognition of the need for greater monitoring of the prospective adoptive home in cases like this one, where parental rights previously have *1202 been terminated and "red flags" have been raised by trained social workers, makes eminent sense.
Even were we to find these two provisions to be in direct conflict, it is well-established that "where two statutory provisions are in conflict, the specific statute controls the general statute." Id. Section 63.062(7) deals specifically with "persons required to consent to adoption" in cases, like this one, where the children's parental rights have previously been terminated under chapter 39, whereas section 63.112(2)(b) & (3) is part of a generic provision setting forth the requirements for a petition for adoption and related filings. These latter provisions do not address post-termination cases. Being the more specific and restrictive of the two chapter 63 provisions, section 63.062(7) controls. "[I]t also is well settled that when two statutes are in conflict, the more recently enacted statute controls the older statute." Id. Section 63.112(2) & (3) was last amended in 2003, see Laws of Florida 2003-58, section 23; whereas sections 39.812(5) and 63.062(7) were amended in 2004, see Laws of Florida 2004-389, section 2, to provide the trial court with statutory authority to waive the Department's consent upon a finding of unreasonably withheld consent, provided that a favorable preliminary adoptive home study is filed too. See B.Y., 887 So.2d at 1257 n. 2. Therefore, the more recently enacted provisions control, and the trial court reversibly erred in failing to make the requisite finding and in waiving the requirement to file a favorable preliminary adoptive home study.
"A statutory provision will not be construed in such a way that it renders meaningless or absurd any other statutory provision." Harris, 772 So.2d at 1287. Given the Legislature's clear intent to protect the best interests of children who are the subjects of adoption proceedings, we cannot reasonably conceive that the lawmakers would have intended a result allowing children (whose parental rights have been terminated under chapter 39 proceedings) to be adopted by any relative without either the consent of the appropriate entity or an appropriate finding by the trial court and the filing of a favorable preliminary adoptive home study.
Because the trial court failed to comply with the statutory requirements, we REVERSE the final judgment of adoption and REMAND the case for further proceedings in accordance with the pertinent statutes. On remand, the trial court also should consider the requirements of sections 63.207(3) (stating that when applicable, the ICPC shall be used in placing children outside the state for adoption) and 63.212(1)(a), Florida Statutes (2005) (stating it is unlawful for any person to place or attempt to place a minor for adoption with a person who primarily lives and works out-of-state unless all the requirements of the ICPC, when applicable, have been met), and its impact on the adoption proceedings.
WOLF and WEBSTER, JJ., concur.
NOTES
[1] Department did not seek rehearing or any further review of that order.