373 So.2d 874 (1978)
STATE of Florida, Appellant,
v.
Larry CHAMPE et al., Appellees.
No. 53811.
Supreme Court of Florida.
December 14, 1978.
On Motion for Clarification February 8, 1979.
*876 Robert L. Shevin and Jim Smith, Attys. Gen. and David K. Miller, Asst. Atty. Gen., Tallahassee, for appellant.
Elton H. Schwarz, Public Defender, Stuart, for appellees.
ENGLAND, Chief Justice.
These consolidated appeals from the county court for Martin County present for our consideration the constitutional validity of Chapter 960, Florida Statutes (1977), the Florida Crimes Compensation Act. That statute was enacted by the 1977 legislature as a comprehensive scheme to fund and dispense money to needy victims of certain crimes. The trial judge below declared various provisions of Chapter 960 unconstitutional and, finding that the invalid provisions were inseparable from those remaining, he declared the entire Act invalid. In an effort to overturn the trial court's order, the state now invokes our jurisdiction pursuant to Article V, Section 3(b)(1) of the Florida Constitution.
The factual background of these consolidated cases is uncomplicated. Larry Champe was arrested for petit larceny (shoplifting), entered a plea of nolo contendere, and was sentenced to sixty days in jail. At the time of sentencing, the state moved the court to impose $10 in additional court costs, as authorized by Section 960.20.[1] Jeffrey Wright pled nolo contendere to charges of reckless driving and driving without a license, was sentenced to pay a fine of $300, and was charged $12 court costs for each of the two charges. At the time of sentencing, the state moved to impose a five percent surcharge on Wright's fine in accordance with Section 960.25.[2]
In a single order, the trial court denied the state's motions in both cases, ruling that "the method of determining the award ... under Section 960.13 is a denial of equal protection and due process,"[3] that "Section *877 960.17 violates Sections 9, 11 and 22 of Article I of the Constitution of the State of Florida,"[4] and that there is no rational way to distinguish Sections 960.20 and 960.25 of the Act from a provision in the Florida Insurance and Tort Reform Act which this Court held to be unconstitutional in State v. Lee, 356 So.2d 276 (Fla. 1978).
The state contends that: (i) the trial judge erred in treating our Lee decision as controlling authority; (ii) the revenue-producing surcharge and $10 additional court cost are a valid and reasonable exercise of the state's police power; (iii) Champe and Wright lack standing to contest the provisions which award benefits to claimants and direct reimbursement by perpetrators of injurious crimes (since neither committed a crime giving rise to a compensation award); and (iv) the trial court overlooked a severability clause in the Act which would allow an invalid provision to be voided without jeopardy to the entire statutory scheme.[5] Appellees argue here that neither the five percent surcharge in Section 960.25 nor the additional $10 cost in Section 960.20 is in fact a "fine" or a "cost," as those terms have been judicially defined, and that both constitute a tax on one class of private persons for the benefit of another class, such as that which we condemned in Lee. Appellees also argue, on equal protection grounds, that the statutory classifications created by Chapter 960 are irrational in that not all victims are eligible for benefits, and that they penalize persons convicted of non-violent, victimless crimes in order to remunerate losses caused solely by violent criminals. Appellees concede that they do not have standing to attack the constitutionality of Section 960.17.
We begin our analysis by eliminating from consideration issues which are either uncontested or not properly before us. First, since the offenses committed by appellees cannot be the basis for any victim compensation award under Section 960.13, and since neither Champe nor Wright is subject to the reimbursement requirements of Section 960.17, we decline to address the constitutionality of those provisions (except insofar as they depend on the severability issue later discussed). Persons not affected by the operation of a statute have no standing to challenge its validity.[6] Second, as there is no dispute by appellees as to the legitimacy of the public purpose upon which the Act is founded,[7] we need not dwell on the limits of the public purpose doctrine.
Our concerns, then, are whether Sections 960.20 and 960.25 constitute an invalid exercise of the police power, whether they deprive appellees of equal protection, whether, *878 if one or both are constitutionally defective, they are severable from the balance of the Act, and whether these provisions impose unlawful taxes.
1. Exercise of police power. The trial judge grounded his ruling as to Sections 960.20 and 960.25 entirely on our decision in State v. Lee, 356 So.2d 276 (Fla. 1978), where we struck down the so-called "Good Drivers' Incentive Fund" created by Section 42 of the Florida Insurance and Tort Reform Act. In Lee, we held
that Section 42 is unconstitutional on the grounds that (i) it improperly uses the police power to take private property from one group of individuals solely for the benefit of another limited class of individuals... .[8]
The Crimes Compensation Act, however, is materially different from the Good Drivers' Incentive Fund in Lee.
The legislature may with impunity levy fines for various offenses and use that revenue in a manner designed to further a legitimate public purpose. We held in Lee, however, that the police power "cannot be invoked to distribute collected funds arbitrarily and discriminatorily to a special limited class of private individuals."[9] Legislation is not invalid simply because it benefits a limited group, but any disbursement of public funds which benefits a limited group of individuals must to some degree also serve the welfare of the general public.[10] The benefits of the Good Drivers' Incentive Fund in Lee could only be realized by a limited class of citizens, which group incidentally did not even include all "good" drivers.[11] The Fund did not operate to advance the welfare of the general public in any perceptible manner; it merely conferred a financial benefit on a certain arbitrarily limited class of individuals.
In contrast, an arbitrary limitation on the class of beneficiaries, fatal to the Good Drivers' Incentive Fund provision, is notably absent here. The Crimes Compensation Act potentially benefits any citizen of this state, including persons who at some previous time may have committed an offense and contributed to the pool of funds. In addition to the fact that any member of the public is potentially eligible for an actual disbursement of dollars from the compensation fund, the Act benefits the general public in two other respects. It requires offenders to bear the expense of compensating needy crime victims, fulfilling what the legislature has identified as "a matter of moral responsibility" for the state, and it shifts a financial burden that would otherwise fall on all Florida taxpayers by alleviating the need for assistance from publicly-funded medical care, unemployment compensation, and welfare programs. No such broad public benefits were discernible with respect to the Good Drivers' Incentive Fund.
2. Equal protection. In Lee, we held that Section 42 is unconstitutional on the grounds that ... (ii) it violates the Equal Protection Clause of the United States and Florida Constitutions in that it constitutes an irrational classification.[12]
The test we applied there in assessing the equal protection challenge was whether the statutory classification was based on some difference which is reasonably related to the purpose of the legislation.[13] The criteria used to distinguish good from bad drivers in Lee were found to be totally unrelated to the statutory objective of encouraging *879 the safe operation of motor vehicles. Some persons, for example, would be classified as "bad" drivers even though they were not operating a motor vehicle.
Appellees argue here that the classifications in Chapter 960 do not rest on any difference that is reasonably related to its purposes, since it imposes additional penalties and costs on persons (such as themselves) who have committed non-violent offenses, for the purpose of compensating certain victims of violent offenders. An analysis of the two independent classifications in the Act reveals, however, that each is reasonably related to one of the two objectives of the legislation.
As to the classification of persons who are eligible for benefits, it cannot be said that the legislature acted irrationally in limiting the class to victims who can demonstrate actual need. Recognizing that the Constitution does not require the legislature to address the entirety of any problem at one time,[14] the need limitation is clearly consistent with standards embodied in a host of similar public benefit laws, and it is manifestly rational in relation to the objective of relieving demands on taxpayer-funded assistance programs.
As to the classification of persons subject to the penalty, we reject the notion that the financial penalties of Section 960.20 or Section 960.25 can only be applied to perpetrators of offenses involving violence. Laws which classify violent and non-violent offenders together for purposes related solely to the prevention of violent crimes have consistently been upheld against equal protection attacks. See United States v. Brown, 484 F.2d 418, 423 (5th Cir.1973), cert. denied, 415 U.S. 960, 94 S.Ct. 1490, 39 L.Ed.2d 575 (1974); Cody v. United States, 460 F.2d 34, 36 n. 3 (8th Cir.), cert. denied, 409 U.S. 1010, 93 S.Ct. 454, 34 L.Ed.2d 303 (1972); United States v. Thoresen, 428 F.2d 654, 660 (9th Cir.1970). It is not irrational for the legislatures similarly to combine all lawbreakers for the purpose of remedying the consequences of violent crime.[15] There is, then, no infirmity in the legislature's use of this broad-brush approach to make both of these penalty provisions applicable to all criminal offenders.
Section 960.25, however, imposes a five percent surcharge not only on violent and non-violent criminal offenders, but on those who pay civil fines as well. The latter classification poses more serious constitutional considerations. Generally speaking, the legislature is free to set civil fines and penalties in amounts which are not so excessive as to be "cruel" or "unusual," and which offend no other constitutional proscriptions.[16] The imposition of a surcharge on civil penalties, however, must still meet equal protection standards and "rest on some difference that bears a just and reasonable relation to the statute in respect to which the classification is proposed."[17] A direct civil charge levied solely to compensate crime victims clearly does not satisfy that test.
3. Severability. The invalidation of that portion of Section 960.25 which imposes a surcharge on civil penalties does not require an invalidation of the whole *880 section or the entire Act. We have a duty to uphold the validity of legislative enactments to the extent possible,[18] and the expression of a legislative preference for the severability of voided clauses, although not binding, is highly persuasive.[19] Having confined the surcharge to criminal proceedings, we hold that Section 960.25 may be validly applied without the words "or civil penalty." A severance of that provision may reduce the fund available for the compensation of victims, but it will not impair either the operation or the effectiveness of the statute.
4. Unlawful taxes. Appellees' remaining point, never addressed by the trial court, is that the charge imposed by Section 960.20 is not a "cost," and that the charge imposed by Section 960.25 is not a "fine," but rather that both are illegal taxes. They assert that fines must be imposed strictly as punishment for the commission of crimes, and that costs must be expenses incident to case prosecution. The latter contention was specifically rejected in State v. Young, 238 So.2d 589 (Fla. 1970). As to the former, the five percent surcharge in Section 960.25 may quite properly be considered as a form of punishment for the offense. Punishment in the form of restitution is not a novel concept,[20] and this form of punitive measure is valid unless so "excessive" or "harsh" as to be "plainly and undoubtedly in excess of any reasonable requirements for redressing the wrong."[21] The five percent surcharge in the statute is reasonably and uniformly proportionate to the gravity of the offense, and therefore constitutionally sound.
Sections 960.20 and 960.25, the latter as modified by this opinion, are constitutional. The order of the county court declaring the Crimes Compensation Act to be void and unenforceable is reversed, and these consolidated cases are remanded for further proceedings consistent with this opinion.
It is so ordered.
ADKINS, OVERTON, SUNDBERG and HATCHETT, JJ., concur.
ALDERMAN, concurs in part and dissents in part with an opinion, with which BOYD, J., concurs.
ALDERMAN, Justice, concurring in part, dissenting in part.
I concur with that portion of the majority opinion which upholds the constitutional validity of Sections 960.20 and 960.25 against challenges that these provisions are an unreasonable and invalid exercise of the police power and violate the Equal Protection Clause of the United States and Florida Constitutions. I, however, dissent from that portion of the majority opinion holding that the five percent surcharge imposed by Section 960.25 on those who pay civil fines does not meet equal protection standards. I would uphold the Crimes Compensation Act in its entirety.
BOYD, J., concurs.

ON MOTION FOR CLARIFICATION
The state and appellee Champe have both moved the Court to clarify the opinion filed in this case. Champe's request must be *881 denied,[1] but the state has raised a point which merits discussion.
Based on our holding that the five percent surcharge of section 960.25, Florida Statutes (1977), cannot constitutionally be levied on civil penalties (as opposed to criminal fines), the state asks:
Are the penalties imposed for traffic infractions under §§ 316.655 and 318.18, Florida Statutes, to be considered as "fines" or "civil penalties" within the meaning of § 960.25, Florida Statutes?
This question, which substantially affects the administration of the Crimes Compensation Trust Fund,[2] is one of obvious and considerable public importance.
The legislature has declared that charges imposed for traffic infractions are "civil penalties"[3] in Florida's statutes. It has also declared its intent "to decriminalize certain violations" of the traffic code[4] by denominating these forms of violations as "noncriminal infractions."[5] These indicators of legislative intent, coupled with our responsibility to avoid judicial construction of statutes which are plain and unambiguous on their face,[6] suggest that the penalties imposed for noncriminal traffic infractions cannot be considered criminal fines as the state requests.
The state acknowledges an absence of ambiguity in the statute's terminology, but it nevertheless contends that we should recognize that traffic infraction penalties in effect are designed to serve the same purpose as criminal fines  that is, to penalize violators for conduct contrary to the public peace, safety, and welfare. This argument, however, must be rejected because the same argument can be made for virtually any act or omission for which a civil penalty may be imposed. In fact, in the absence of some threat to the public peace, safety, and welfare, there would be no basis for the state to exercise its police power at all. Thus, despite the good motives of the state in seeking to expand the resources of the fund for victims of crime, we cannot transform statutorily created civil penalties into criminal fines for this limited purpose.
The state's motion for clarification is granted, and we hold that the five percent surcharge imposed by section 960.25 may not be applied to the civil penalties imposed for noncriminal traffic infractions.
It is so ordered.
ENGLAND, C.J., and ADKINS, OVERTON and SUNDBERG, JJ., concur.
HATCHETT, J., dissents with an opinion, with which BOYD and ALDERMAN, JJ., concur.
ALDERMAN, J., dissents with an opinion, with which BOYD, J., concurs.
HATCHETT, Judge, dissenting.
Since both parties have petitioned for rehearing and the majority admits that the question presented is "one of obvious and considerable public importance," I would grant the petition for rehearing, require further briefing, and set the case for an early, abbreviated hearing.
BOYD and ALDERMAN, JJ., concur.
ALDERMAN, Judge, dissenting.
As I previously stated in my dissent to that portion of the majority opinion holding that the five percent surcharge imposed by section 960.25 on those who pay civil fines is *882 unconstitutional, I would uphold the Crimes Compensation Act in its entirety. I, therefore, conclude that the five percent surcharge may be applied to the civil penalties imposed for noncriminal traffic infractions.
BOYD, J., concurs.
NOTES
[1] Section 960.20, Florida Statutes (1977), provides in pertinent part:

When any person ... pleads guilty or nolo contendere to, or is convicted of, any felony or misdemeanor under the laws of this state, there shall be imposed as an additional cost ... the sum of $10. The court may waive, modify, or defer payment of the additional costs imposed by this act if it finds they would impose a severe financial hardship.
No contention was made by Champe that the imposition of the $10 additional costs would cause financial hardship.
[2] Section 960.25, Florida Statutes (1977), provides in pertinent part:

In addition to any fine or civil penalty prescribed by law, there is hereby established and created an additional 5 percent surcharge thereon which shall be imposed, levied, and collected together with such fine or civil penalty.
[3] In general, Section 960.13 defines the circumstances under which compensation will be made available to victims of crime, and places limitations on the amount of such awards. For example, subsection (1)(a) provides that no award shall be made unless the crime "directly resulted in personal injury to, or death of, the victim or intervenor" and "was promptly reported to the proper authorities"; subsections (2) and (5) limit the amount of any award to a claimant's "actual need" after all other available benefits have been exhausted; subsection (3) incorporates by reference the loss-of-earnings benefits schedule of the Workmen's Compensation Law for determining amounts awardable; subsection (4) provides for apportionment of awards among multiple claimants; subsection (6) authorizes reduction or rejection of a claim where the victim or intervenor contributed to the injury; subsection (7) requires that awards be denied when no "serious financial hardship" is occasioned by the loss of earnings or expenses, and establishes a test of partial or total dependency; and subsection (8) states that "[n]o claimant shall receive an award in excess of $10,000."
[4] Section 960.17 essentially makes the claimant's compensation award a debt owed to the state by the person convicted of committing the injurious offense, and it permits the appropriate authorities to require the repayment of the debt as a condition of probation or parole. The constitutional provisions which the statute allegedly breaches prohibit a deprivation of property without due process of law, bar imprisonment for debt, and secure the right of trial by jury.
[5] As originally enacted, Chapter 77-452, Section 1, Laws of Florida, contained a severability clause to be codified as Section 897.25. When the remainder of the Act was renumbered and shifted to Chapter 960 by statutory revision personnel, this provision was not transferred.
[6] E.g., State ex rel. Hoffman v. Vocelle, 159 Fla. 88, 31 So.2d 52 (1947).
[7] Section 960.02 is a declaration of policy and legislative intent:

The Legislature recognizes that many innocent persons suffer personal injury or death as a direct result of criminal acts or in their efforts to prevent crime or apprehend persons committing or attempting to commit crimes. Such persons or their dependents may thereby suffer disabilities, incur financial hardships, or become dependent upon public assistance. The Legislature finds and determines that there is a need for government financial assistance for such victims of crime. Accordingly, it is the intent of the Legislature that aid, care, and support be provided by the state, as a matter of moral responsibility, for such victims of crime... .
The legislature's express declaration of public purpose will only be disturbed when found to be clearly unwarranted. See Wald v. Sarasota County Health Facilities Auth., 360 So.2d 763, 770 (Fla. 1978).
[8] 356 So.2d at 278.
[9] Id. at 279.
[10] See United Gas Pipe Line Co. v. Bevis, 336 So.2d 560, 563-64 (Fla. 1976); Liquor Store, Inc. v. Continental Distilling Corp., 40 So.2d 371, 374-75 (Fla. 1949).
[11] In Lee, this Court discussed at length the arbitrary definition assigned "good drivers" and concluded that the classification made did not, in fact, reward good driving. 356 So.2d at 280-81.
[12] 356 So.2d at 278.
[13] See also McLaughlin v. Florida, 379 U.S. 184, 190-91, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964); Gammon v. Cobb, 335 So.2d 261, 264 (Fla. 1976).
[14] See, e.g., Geduldig v. Aiello, 417 U.S. 484, 495, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974); Schilb v. Kuebel, 404 U.S. 357, 364, 35 S.Ct. 342, 59 L.Ed. 628 (1971); Williamson v. Lee Optical of Oklahoma, Inc., 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955); Hughes v. Superior Court of California, 339 U.S. 460, 468-69, 70 S.Ct. 718, 94 L.Ed. 985 (1950); Miller v. Wilson, 236 U.S. 373, 384, 35 S.Ct. 342, 59 L.Ed. 628 (1915); Pacheco v. Pacheco, 246 So.2d 778, 781 (Fla.), appeal dismissed, 404 U.S. 804, 92 S.Ct. 85, 30 L.Ed.2d 36 (1971); Hunter v. Flowers, 43 So.2d 435, 437 (Fla. 1949); State, by Knott v. Minge, 119 Fla. 515, 526, 160 So. 670, 674 (1935).
[15] We are not concerned, of course, with either the wisdom or desirability of the legislation. E.g., Stern v. Miller, 348 So.2d 303, 307 (Fla. 1977); State v. Bales, 343 So.2d 9, 11 (Fla. 1977); State v. Reese, 222 So.2d 732, 736 (Fla. 1969).
[16] Amos v. Gunn, 84 Fla. 285, 94 So. 615 (1922).
[17] Gammon v. Cobb, 335 So.2d 261, 264 (Fla. 1976).
[18] See, e.g., Carter v. Sparkman, 335 So.2d 802, 805 (Fla. 1976); Tyson v. Lanier, 156 So.2d 833, 838 (Fla. 1963); Vocelle v. Knight Bros. Paper Co., 118 So.2d 664, 667 (Fla. 1st DCA 1960). Statutes which are designed to achieve some humane or beneficent purpose should in particular be liberally construed, even though they embody a penal provision. City of Miami Beach v. Berns, 245 So.2d 38, 40 (Fla. 1971).
[19] Small v. Sun Oil Co., 222 So.2d 196, 199 (Fla. 1969).
[20] Florida courts are expressly authorized to order a defendant to make restitution, Section 775.089, Florida Statutes (1977), and we recently held that under certain circumstances restitution may properly be required as a condition of probation. Fresneda v. State, 347 So.2d 1021 (Fla. 1977). Other jurisdictions have upheld the power of the state to impose restitution as a sentence for crime, when authorized by statute. See generally 24B C.J.S. Criminal Law § 2007 (1962).
[21] Amos v. Gunn, 84 Fla. 285, 364, 94 So. 615, 641 (1922). See also Sowell v. State, 342 So.2d 969 (Fla. 1977).
[1] Champe's question involves a factual determination which was neither presented nor determined below and will not be considered on this appeal. E.g., Silver v. State, 188 So.2d 300 (Fla. 1966).
[2] Although no established statistics have been presented to substantiate the claim, the state informs us that an estimated sixty-five to seventy percent of all revenues collected under the Crimes Compensation Act to date has been derived from surcharges on traffic infraction penalties.
[3] See §§ 316.655(2), 318.14, and 318.18, Fla. Stat. (1977).
[4] § 318.12, Fla. Stat. (1977).
[5] §§ 318.13(3) and 318.14, Fla. Stat. (1977).
[6] See, e.g., Heredia v. Allstate Ins. Co., 358 So.2d 1353 (Fla. 1978); Reino v. State, 352 So.2d 853 (Fla. 1977).