# Supreme Court of Florida

_____

No. SC18-79
_____

**ORANGE COUNTY, FLORIDA,**
Petitioner,

vs.

**RICK SINGH, etc., et al.,**
Respondents.

January 4, 2019

QUINCE, J.

We have for review *Orange County v. Singh*, 230 So. 3d 639 (Fla. 5th DCA 2017)*,* a decision of the Fifth District Court of Appeal that expressly construes a provision of the Florida Constitution.  Additionally, Orange County asserts that the decision below conflicts with *Telli v. Broward County*, 94 So. 3d 504 (Fla. 2012).  We have jurisdiction.  Art. V, § 3(b)(3), Fla. Const.  We quash the decision below and uphold the validity of the ordinance with the exception of the language we discuss below, which we conclude to be in direct conflict with section 100.041, Florida Statutes (2018).

# FACTS

The underlying facts were discussed in the Fifth District's opinion as follows:

On August 19, 2014, the Orange County Board of Commissioners enacted an ordinance proposing an amendment to the Orange County Charter to provide for term limits and nonpartisan elections for six county constitutional officers—clerk of the circuit court, comptroller, property appraiser, sheriff, supervisor of elections, and tax collector. The ordinance provided for the following ballot question to be presented for further approval:

CHARTER AMENDMENT PROVIDING FOR TERM LIMITS AND NON–PARTISAN ELECTIONS FOR COUNTY CONSTITUTIONAL OFFICERS
For the purpose of establishing term limits and nonpartisan elections for the Orange County Clerk of the Circuit Court, Comptroller, Property Appraiser, Sheriff, Supervisor of Elections and Tax Collector, this amendment provides for county constitutional officers to be elected on a non-partisan basis and subject to term limits of four consecutive full 4–year terms.
_____ Yes
_____ No

The ballot question appeared on the November 4, 2014[,] ballot and was approved by the majority of Orange County voters. As a result, the relevant portions of section 703 of the Orange County Charter were amended (as underlined) to read:

B. Except as may be specifically set forth in the Charter, the county officers referenced under Article VIII, Section 1(d) of the Florida Constitution and Chapter 72–461, Laws of Florida, shall not be governed by the Charter but instead governed by the Constitution and laws of the State of Florida. The establishment of nonpartisan elections and term limits for county

- 2 -

> constitutional officers shall in no way affect or impugn their status as independent constitutional officers, and shall in no way imply any authority by the board whatsoever over such independent constitutional officers.
>
> C. Elections for all county constitutional offices shall be non-partisan. No county constitutional office candidate shall be required to pay any party assessment or be required to state the party of which the candidate is a member. All county constitutional office candidates' names shall be placed on the ballot without reference to political party affiliation.
>
> In the event that more than two (2) candidates have qualified for any single county constitutional office, an election shall be held at the time of the first primary election and, providing no candidate receives a majority of the votes cast, the two (2) candidates receiving the most votes shall be placed on the ballot for the general election.
>
> D. Any county constitutional officer who has held the same county constitutional office for the preceding four (4) full consecutive terms is prohibited from appearing on the ballot for reelection to that office; provided, however, that the terms of office beginning before January 1, 2015 shall not be counted.

Prior to the November 4, 2014 election, three Orange County constitutional officers—the sheriff, property appraiser, and tax collector (collectively "Appellees")—filed a suit for declaratory and injunctive relief against Orange County, challenging the underlying county ordinance as well as the ballot title and summary. After the election, in ruling on competing summary judgment motions, the trial court upheld the portion of the charter amendment providing for term limits, but struck down that portion providing for nonpartisan elections. The trial court concluded that Orange County was prohibited from regulating nonpartisan elections for county constitutional officers because that subject matter was preempted to the Legislature.

*Singh*, 230 So. 3d at 640-41 (footnote omitted).

- 3 -

On appeal, the Fifth District Court of Appeal reasoned that while counties have broad home rule powers under article VIII, section 1(g) of the Florida Constitution, "Orange County cannot regulate the method and timing of its election for county constitutional officers because that subject area has been preempted to the State." *Singh*, 230 So. 3d at 641. The district court affirmed the trial court's striking of the conflicting portion of the ordinance. *Id.* at 642. Orange County now appeals.

## DISCUSSION

> "A regularly enacted ordinance will be presumed to be valid until the contrary is shown, and a party who seeks to overthrow such an ordinance has the burden of establishing its invalidity." *State ex rel. Office Realty Co. v. Ehinger,* 46 So. 2d 601, 602 (Fla. 1950) (citation omitted). An appellate court will "indulge every reasonable presumption in favor of an ordinance's constitutionality." *City of Pompano Beach v. Capalbo,* 455 So. 2d 468, 469 (Fla. 4th DCA 1984).

*Lowe v. Broward County*, 766 So. 2d 1199, 1203-04 (Fla. 4th DCA 2000). A charter county such as Orange County obtains its sovereign powers through article VIII, section 1(g) of the Florida Constitution. *See, e.g.*, *Lowe*, 766 So. 2d at 1204. We have "broadly interpreted the self-governing powers granted charter counties" under that article. *Id.* (quoting *State v. Broward Cty.*, 468 So. 2d 965, 969 (Fla. 1985)).

- 4 -

Below, the Fifth District held that section 97.0115, Florida Statutes (2010), expressly preempts the Orange County ordinance requiring nonpartisan elections for county constitutional officers. *Id.* at 641-42. The Fifth District reasoned that the Legislature regulates elections generally through the Florida Election Code and "enacted section 97.0115 which expressly provides that all matters set forth in the Florida Election Code were preempted" to the Legislature. *Id.* at 642. The Fifth District further reasoned that chapter 105, Florida Statutes, "set forth provisions and procedures specific to nonpartisan elections," and "chapter 105 did not authorize counties to hold nonpartisan elections for the county constitutional officers that are the subject of the charter amendment at issue." *Id.* Because we find that the Florida Election Code does not expressly preempt Orange County's home rule authority to determine that constitutional officers be elected in a general election without partisan affiliation and find severable the conflicting portion of the ordinance requiring the election of these officers to occur at the primary election, we quash the decision below.

Article VIII, section 1(g) of the Florida Constitution provides that charter counties "shall have all powers of local self-government not inconsistent with general law." Art. VIII, § l(g), Fla. Const. Further, a charter county "may enact county ordinances not inconsistent with general law." *Id.* There are two ways a county ordinance can be inconsistent with state law and, therefore,

unconstitutional. *Phantom of Brevard, Inc. v. Brevard Cty.*, 3 So. 3d 309, 314 (Fla. 2008). "First, a county cannot legislate in a field if the subject area has been preempted to the State." *Id.* Second, "a county cannot enact an ordinance that directly conflicts with a state statute." *Id.*

Florida law recognizes these two types of preemption: express and implied. Express preemption requires a specific legislative statement; it cannot be implied or inferred. *Id.* Preemption is implied "when 'the legislative scheme is so pervasive as to evidence an intent to preempt the particular area, and where strong public policy reasons exist for finding such an area to be preempted by the Legislature.' " *Phantom of Clearwater, Inc. v. Pinellas Cty.*, 894 So. 2d 1011, 1019 (Fla. 2d DCA 2005) (quoting *Tallahassee Mem'l Reg'l Med. Ctr., Inc. v. Tallahassee Med. Ctr., Inc.*, 681 So. 2d 826, 831 (Fla. 1st DCA 1996)).

Section 97.0115 was enacted in 2010 in response to our decision in *Sarasota Alliance for Fair Elections, Inc. v. Browning*, 28 So. 3d 880 (Fla. 2010), which held that the Florida Election Code does not impliedly or expressly preempt the field of election law. Through the enactment of section 97.0115, the Legislature expressly stated that "all matters" set forth in the Florida Election Code are preempted to the state. *See* § 97.0115, Fla. Stat. (2018). Whether the county constitutional officers must stand for election in partisan or nonpartisan elections is not a matter set forth in the Florida Election Code and is, therefore, not preempted.

- 6 -

Article VIII, section 1(d), provides for the election of county constitutional officers, requiring that the officers appear on the general election ballot, but does not specifically label such election as "partisan" or "nonpartisan."  *See* § 100.031, Fla. Stat. (2018) ("A general election shall be held in each county . . . to choose a successor to each elective . . . county officer . . . ."); § 100.041(1), Fla. Stat. (2018) ("In each county, a clerk of the circuit court, sheriff, superintendent of schools, property appraiser, and tax collector shall be chosen by the qualified electors at the general election in each year the number of which is a multiple of 4."). Accordingly, the Florida Election Code mandates that county constitutional officers be elected at a general election.  However, the language in this section does not require the election to be partisan.

Section 100.051, Fla. Stat. (2018), provides:

> The supervisor of elections of each county shall print on ballots to be used in the county at the next general election the names of candidates who have been nominated by a political party *and the candidates who have otherwise obtained a position on the general election ballot in compliance with the requirements of this code*.

§ 100.051, Fla. Stat. (2018) (emphasis added).  While the Fifth District did not consider this below, candidates may qualify for the general ballot by other methods than party nomination.  *See* §§ 99.0955–99.096, Fla. Stat. (2018) (providing for the appearance of candidates with no party affiliation or affiliation with minor parties on the general election ballot).  Therefore, the ordinance's mandate that "[a]ll

- 7 -

county constitutional office candidates' names shall be placed on the ballot without reference to political party affiliation" is not inconsistent with statutory law.

The portion of the Orange County ordinance that requires such an election to be held at the primary election, however, is inconsistent with section 100.041, Florida Statutes (2018), which requires that county constitutional officers appear on the general election ballot. We therefore turn to whether this portion of the ordinance is severable.

"Severability is a judicial doctrine recognizing the obligation of the judiciary to uphold the constitutionality of legislative enactments where it is possible to strike only the unconstitutional portions." *Demings v. Orange Cty. Citizens Review Bd.*, 15 So. 3d 604, 611 (Fla. 5th DCA 2009) (quoting *Ray v. Mortham*, 742 So. 2d 1276, 1280 (Fla. 1999)). We have previously recognized the legislatively expressed preference for the severability of voided clauses. *See St. Johns Cty. v. Ne. Fla. Builders Ass'n, Inc.*, 583 So. 2d 635, 640 (Fla. 1991) (citing *State v. Champe*, 373 So. 2d 874, 880 (Fla. 1978)). As we recognized then, the test for severability is whether the portion to be stricken is of such import that the remainder would be incomplete or would cause results not contemplated by the enacting body. *Id.*

Because the purpose of the ordinance, as adopted by the voters of Orange County, was to "provide[ ] for county constitutional officers to be elected on a non-

partisan basis," and there is a way to achieve this goal consistently with the Florida Election Code by having the candidates for these offices appear on the general ballot without party affiliation pursuant to section 99.0955, we find that the offending language may be stricken without rendering the remainder incomplete. Accordingly, we quash the decision below and uphold the validity of the ordinance upon the severance therefrom of the language requiring the county constitutional officers to be elected during the primary election.

It is so ordered.

PARIENTE, LEWIS, and LABARGA, JJ., concur.
POLSTON, J., dissents with an opinion, in which CANADY, C.J., and LAWSON, J., concur.

NO MOTION FOR REHEARING WILL BE ALLOWED.

POLSTON, J., dissenting.

I respectfully dissent. The majority's decision blatantly disregards the language of the Florida Election Code, which expressly preempts the field of regulating elections to the State. § 97.0115, Fla. Stat. (2018) ("All matters set forth in chapters 97-105 are preempted to the state, except as otherwise specifically authorized by state or federal law."). It also ignores an obvious and impermissible conflict between the Florida Election Code and the Orange County ordinance: While the Florida Election Code permits candidates nominated by major parties in

- 9 -

the primary election to appear on the general election ballot for county constitutional offices, the Orange County ordinance prohibits it.

Chapter 105, Florida Statutes (2018), sets forth the only provisions and procedures specific to nonpartisan elections, but chapter 105 does not authorize counties to hold nonpartisan elections for the county constitutional officers[1] that are the subject of the charter amendment at issue. Instead, the Florida Election Code expressly states that candidates for county offices are to compete in partisan primary elections, meaning candidates for county offices are expressly authorized by statute to seek the nomination of a party in the primary election before the county office seat is filled in the general election. *See* § 97.021(29), Fla. Stat. (2018) (" 'Primary election' means an election held preceding the general election for the purpose of nominating a party nominee to be voted for in the general election to fill a national, state, *county*, or district office." (emphasis added)); *see also* § 100.051, Fla. Stat. (2018) (explaining that general election ballots are to list "the names of candidates who have been nominated by a political party and the candidates who have otherwise obtained a position on the general election ballot in compliance with the requirements of this code").

---

1. Article VIII, section 1(d) of the Florida Constitution lists the following county officers: "a sheriff, a tax collector, a property appraiser, a supervisor of elections, and a clerk of the circuit court."

- 10 -

The majority attempts to gloss over the ordinance's direct conflict of banning partisan elections for county constitutional offices by explaining that under the Florida Election Code no-party affiliation candidates and minor party candidates may qualify for placement on the general election ballot as well. *See* majority opinion at 7. However, the fact that no-party affiliation candidates and minor party candidates may appear on the general election ballot along with major party candidates does not transform partisan elections into nonpartisan ones. Major party candidates are routinely listed on the general election ballot with no-party affiliation candidates and minor party candidates when they are seeking election to the same office.[2] For example, the appearance of 3 no-party affiliation candidates on this year's general election ballot for Governor did not mean that Andrew Gillum could not be listed as a Democrat and that Ron DeSantis could not be listed as a Republican. This is true even though the Florida Election Code does

---

2. *See, e.g.*, Duval County 2018 General Election Sample Ballot (Nov. 6, 2018), https://www.duvalelections.com/Portals/Duval/Documents/Elections/2018%20Election/2018GenSuperSampleEng.pdf; Orange County 2016 General Election Sample Ballot (Nov. 8, 2016), https://www.ocfelections.com/Public%20Records/2016%20Elections/2016%20Sample%20Ballots/General/2016%20General%20Election%20Composite%20Sample%20Ballot.pdf.

not specifically state that the election for Governor is a "partisan" election.[3]

Therefore, despite the majority's seriously misguided attempt to explain the

conflict away, the fact remains that the Orange County ordinance prohibits what

the Florida Election Code expressly permits, namely the appearance of candidates

nominated by political parties on the general election ballot for county

constitutional officers.

Accordingly, because home-rule counties may not enact ordinances on

subjects preempted to the State and inconsistent with general law,[4] I would

approve the decision of the Fifth District Court of Appeal in *Orange County v.*

*Singh*, 230 So. 3d 639 (Fla. 5th DCA 2017), invalidating the ordinance.

## I.  The Florida Election Code

Article VI, section 1 of the Florida Constitution provides that "[r]egistration

and elections shall, and political party functions may, be regulated by law[.]" *See*

*Grapeland Heights Civic Ass'n v. City of Miami*, 267 So. 2d 321, 324 (Fla. 1972)

---

3.  Like county constitutional officers, the Florida Election Code does not specifically state whether the Governor must stand for "partisan" or "nonpartisan election." *Cf.* majority op. at 6 ("Whether the county constitutional officers must stand for election in partisan or nonpartisan elections is not a matter set forth in the Florida Election Code.").

4.  Article VIII, section 1(g) of the Florida Constitution provides that "[t]he governing body of a county operating under a charter may enact county ordinances not inconsistent with general law."

("[I]t necessarily follows that 'law' *in our constitution* means an enactment by the State Legislature . . .—not by a City Commission or any other political body."). The Legislature regulates elections through the Florida Election Code, which encompasses chapters 97-106.[5] Importantly, the Florida Election Code contains express language of preemption as section 97.0115 states that "[a]ll matters set forth in chapters 97-105 are preempted to the state, except as otherwise specifically authorized by state or federal law." The Florida Election Code further explains that the Secretary of State, as "the chief election officer of the state," is to "[o]btain and maintain uniformity in the interpretation and implementation of the election laws." § 97.012(1), Fla. Stat. (2018).

The Florida Election Code generally contemplates partisan elections.[6] In other words, candidates nominated by political parties in the primary election are to appear on the general election ballot for most offices. *See* § 101.151(2)(c), Fla. Stat. (2018) ("Each nominee of a political party chosen in a primary shall appear on the general election ballot in the same numbered group or district as on the primary election ballot."). In fact, section 97.021(29) (emphasis added), defines a

---

5. Section 97.011, Florida Statutes (2018), provides "[c]hapters 97-106 inclusive shall be known and may be cited as 'The Florida Election Code.' "

6. In construing the Florida Election Code, it is necessary to read all provisions in pari materia. *Palm Beach Cty. Canvassing Bd. v. Harris*, 772 So. 2d 1273, 1290 n.22 (Fla. 2000).

"[p]rimary election" as "an election held preceding the general election for the purpose of nominating a party nominee to be voted for in the general election to fill a national, state, *county*, or district office."

Specifically, section 100.051 provides that "[t]he supervisor of elections of each county shall print on ballots used in the county at the next general election the names of candidates who have been nominated by a political party and the candidates who have otherwise obtained a position on the general election ballot in compliance with the requirements of this code." In addition to the candidates nominated by political parties, no-party affiliation candidates, minor political party candidates, and spaces for write-in candidates may be listed on the general election ballot and may compete for the same offices as the major political party candidates in compliance with the Florida Election Code. Section 99.0955, Florida Statutes (2018), provides that "[e]ach person seeking to qualify for election as a candidate with no party affiliation shall file his or her qualifying papers and pay the qualifying fee or qualify by the petition process pursuant to s. 99.095 [and] . . . [u]pon qualifying, the candidate is entitled to have his or her name placed on the general election ballot." Moreover, section 99.096, Florida Statutes (2018), explains that "[e]ach person seeking to qualify for election as a candidate of a minor political party shall file his or her qualifying papers with, and pay the qualifying fee and, if one has been levied, the party assessment, or qualify by the

- 14 -

petition process pursuant to s. 99.095." And section 99.061(4)(b), Florida Statutes (2018), states that, after qualifying, "[a] write-in candidate is not entitled to have his or her name printed on any ballot; however, space for the write-in candidate's name to be written in must be provided on the general election ballot [but a] person may not qualify as a write-in candidate if the person has also otherwise qualified for nomination or election to such office."

Regarding qualifying for nomination or election to county offices in particular, section 99.061(2) (emphasis added) provides that "each person seeking to qualify for nomination or election to a county office . . . shall file his or her qualification papers with, and pay the qualifying fee, which shall consist of the filing fee and election assessment, *and party assessment*, if any has been levied, to, the supervisor of elections of the county, or shall qualify by the petition process pursuant to s. 99.095." The same subsection also states that "the supervisor of elections shall remit to the secretary of the state executive committee of *the political party to which the candidate belongs* the amount of the filing fee, two-thirds of which shall be used to promote *the candidacy of candidates for county offices* and the candidacy of members of the Legislature." *Id.* (emphasis added).

Regarding timing, section 100.031, Florida Statutes (2018), provides that "[a] general election shall be held in each county on the first Tuesday after the first Monday in November of each even-numbered year." Section 100.061, Florida

Statutes (2018), states that "a primary election for nomination of candidates of political parties shall be held on the Tuesday 10 weeks prior to the general election." Further, section 100.041(1), Florida Statutes (2018) (emphasis added), lists the following offices, including several county constitutional offices, that are to be chosen at the general election after a primary election:

> State senators shall be elected for terms of 4 years, those from odd-numbered districts in each year the number of which is a multiple of 4 and those from even-numbered districts in each even-numbered year the number of which is not a multiple of 4. Members of the House of Representatives shall be elected for terms of 2 years in each even-numbered year. *In each county, a clerk of the circuit court, sheriff, superintendent of schools, property appraiser, and tax collector shall be chosen by the qualified electors at the general election in each year the number of which is a multiple of 4.* The Governor and the administrative officers of the executive branch of the state shall be elected for terms of 4 years in each even-numbered year the number of which is not a multiple of 4. The terms of state offices other than the terms of members of the Legislature shall begin on the first Tuesday after the first Monday in January after said election. The term of office of each member of the Legislature shall begin upon election.

*See also* § 98.015(1), Florida Statutes (2018) ("A supervisor of elections shall be elected in each county at the general election in each year the number of which is a multiple of four for a 4-year term commencing on the first Tuesday after the first Monday in January succeeding his or her election.").

However, while the Florida Election Code contemplates elections for most offices to include candidates nominated by political parties, it also specifies that

elections for certain offices must be nonpartisan.  Pursuant to section 97.021(22), Florida Statutes (2018), " 'Nonpartisan office' means an office for which a candidate is prohibited from campaigning or qualifying for election or retention in office based on party affiliation."  Then, chapter 105, entitled "Nonpartisan Elections," provides that judicial officers and school board members are nonpartisan offices.  Candidates for judicial offices (or those seeking retention) are "prohibited from campaigning or qualifying for such [offices] based on party affiliation." § 105.011(2), Fla. Stat. (2018).  Furthermore, section 105.09(1), Florida Statutes (2018), states that "[n]o political party or partisan political organization shall endorse, support, or assist any candidate in a campaign for election to judicial office."  Section 105.035(1), Florida Statutes (2018), also explains that "[a] person seeking to qualify for election to the office of circuit judge or county court judge or the office of school board member may qualify for election to such office by means of the petitioning process prescribed in this section."  And section 105.041(3)-(4), Florida Statutes (2018), states that "[n]o reference to political party affiliation shall appear on any ballot with respect to any nonpartisan office or candidate," while "[s]pace shall be made available on the general election ballot" for write-in candidates for circuit and county court judge as well as school board members.

Regarding timing of the nonpartisan elections, section 105.051(1)(b), Florida Statutes (2018), provides that elections for judicial officers and school board members are to be conducted during the primary election with the possibility of a run-off during the general election:

> If two or more candidates, neither of whom is a write-in candidate, qualify for such an office, the names of those candidates shall be placed on the ballot at the primary election. If any candidate for such office receives a majority of the votes cast for such office in the primary election, the name of the candidate who receives such majority shall not appear on any other ballot unless a write-in candidate has qualified for such office. An unopposed candidate shall be deemed to have voted for himself or herself at the general election. If no candidate for such office receives a majority of the votes cast for such office in the primary election, the names of the two candidates receiving the highest number of votes for such office shall be placed on the general election ballot. If more than two candidates receive an equal and highest number of votes, the name of each candidate receiving an equal and highest number of votes shall be placed on the general election ballot. In any contest in which there is a tie for second place and the candidate placing first did not receive a majority of the votes cast for such office, the name of the candidate placing first and the name of each candidate tying for second shall be placed on the general election ballot.

Additionally, the nonpartisan chapter of the Florida Election Code, chapter 105, specifies that the retention elections of appellate judges are to take place during the general election. § 105.051(2), Fla. Stat. (2018).

Notably, chapter 105 does not include any county constitutional officers as nonpartisan. The specific references to the county constitutional officers in the Florida Election Code are in its more general provisions in which candidates

nominated by political parties may appear on the general ballot. Moreover, although the Florida Election Code expressly allows for municipal elections to vary from its requirements pursuant to an ordinance or charter so long as the variance does not conflict with "any provision in the Florida Election Code that expressly applies to municipalities," § 100.3605(1), Florida Statutes (2018), there is no similar allowance for county elections.

## II. The Orange County Ordinance is Expressly Preempted & In Conflict

Orange County contends, and the majority holds, that the ordinance at issue in this case is not expressly preempted by or in conflict with the Florida Election Code. I disagree.

In *Phantom of Brevard, Inc. v. Brevard County*, 3 So. 3d 309 (Fla. 2008), this Court explained the following standards regarding whether a county ordinance is preempted by or in conflict with a statute:

> Pursuant to our Constitution, chartered counties have broad powers of self-government. *See* art. VIII, § 1(g), Fla. Const. Indeed, under article VIII, section 1(g) of the Florida Constitution, chartered counties have the broad authority to "enact county ordinances not inconsistent with general law." *See also* David G. Tucker, *A Primer on Counties and Municipalities, Part I*, Fla. B.J., Mar. 2007, at 49. However, there are two ways that a county ordinance can be inconsistent with state law and therefore unconstitutional. First, a county cannot legislate in a field if the subject area has been preempted to the State. *See City of Hollywood v. Mulligan*, 934 So. 2d 1238, 1243 (Fla. 2006). "Preemption essentially takes a topic or a field in which local government might otherwise establish appropriate local laws and reserves that topic for regulation exclusively by the

- 19 -

legislature." *Id.* (quoting *Phantom of Clearwater[, Inc. v. Pinellas County]*, 894 So. 2d [1011], 1018 [(Fla. 2DCA 2005]).  Second, in a field where both the State and local government can legislate concurrently, a county cannot enact an ordinance that directly conflicts with a state statute.  *See Tallahassee Mem'l Reg'l Med. Ctr., Inc. v. Tallahassee Med. Ctr., Inc.*, 681 So. 2d 826, 831 (Fla. 1st DCA 1996).  Local "ordinances are inferior to laws of the state and must not conflict with any controlling provision of a statute."  *Thomas v. State*, 614 So. 2d 468, 470 (Fla. 1993); *Hillsborough County v. Fla. Rest. Ass'n*, 603 So. 2d 587, 591 (Fla. 2d DCA 1992) ("If [a county] has enacted such an inconsistent ordinance, the ordinance must be declared null and void."); *see also Rinzler v. Carson*, 262 So. 2d 661, 668 (Fla. 1972) ("A municipality cannot forbid what the legislature has expressly licensed, authorized or required, nor may it authorize what the legislature has expressly forbidden.").

There is conflict between a local ordinance and a state statute when the local ordinance cannot coexist with the state statute.  *See City of Hollywood*, 934 So. 2d at 1246; *see also State ex rel. Dade County v. Brautigam*, 224 So. 2d 688, 692 (Fla. 1969) (explaining that "inconsistent" as used in article VIII, section 6(f) of the Florida Constitution "means contradictory in the sense of legislative provisions which cannot coexist").  Stated otherwise, "[t]he test for conflict is whether 'in order to comply with one provision, a violation of the other is required.' " *Browning v. Sarasota Alliance for Fair Elections, Inc.*, 968 So. 2d 637, 649 (Fla. 2d DCA 2007) (quoting *Phantom of Clearwater*, 894 So. 2d at 1020), *review granted*, No. SC07-2074 (Fla. Nov. 29, 2007).

In this case, the Florida Election Code expressly preempts the Orange County ordinance requiring nonpartisan elections for its county constitutional officers.  Section 97.0115 provides that "[a]ll matters set forth in chapters 97-105 are preempted to the state, except as otherwise specifically authorized by state or federal law."  As explained above, the Florida Election Code contemplates partisan elections for most offices, and it does not specifically authorize otherwise for

- 20 -

county constitutional officers. Furthermore, as the majority recognizes, article VIII, section 1(d) of the Florida Constitution does not expressly label the election of county constitutional officers as "partisan" or "nonpartisan." *See* majority op. at 6. Therefore, this constitutional provision is not an exception to the preemption language contained in section 97.0115.

The Florida Election Code contains detailed provisions specific to county constitutional officers and county elections, provisions that are within the portions of the code providing for partisan elections. Section 100.041 states that "[i]n each county, a clerk of the circuit court, sheriff, superintendent of schools, property appraiser, and tax collector shall be chosen by the qualified electors at the general election in each year the number of which is a multiple of 4." *See also* § 100.031, Fla. Stat. ("A general election shall be held in each county . . . to choose a successor to each elective . . . county . . . officer . . . ."); § 98.015, Fla. Stat. ("A supervisor of elections shall be elected in each county at the general election . . . ."). Further, section 100.051 expressly provides that candidates listed on the general election ballot are "candidates who have been nominated by a political party *and* the candidates who have otherwise obtained a position on the general election ballot in compliance with the requirements of this code." (Emphasis added.)

In contrast, the Orange County ordinance provides as follows:

- 21 -

> Elections for all county constitutional offices shall be non-partisan. No county constitutional office candidate shall be required to pay any party assessment or be required to state the party of which the candidate is a member. All county constitutional offices candidates' names shall be placed on the ballot without reference to party affiliation.

*Orange County*, 230 So. 3d at 640-41 (quoting amended charter).

As the majority properly recognizes, "[t]he portion of the Orange County ordinance that requires such an election to be held at the primary election . . . is inconsistent with section 100.041, Florida Statutes (2018), which requires that county constitutional officers appear on the general election ballot." Majority op. at 8. It also conflicts with section 98.015, Florida Statutes, which separately addresses the election of the supervisor of elections. *See* § 98.015, Fla. Stat. ("A supervisor of elections shall be elected in each county at the general election . . . .").

However, contrary to the majority's holding, even if the portion of the Orange County ordinance that requires such an election to be held during the primary election is severed, a glaring and unconstitutional conflict remains. The Orange County ordinance prohibits a candidate for county constitutional office from being referenced on the ballot by party or seeking nomination by a party during the primary election. However, the Florida Election Code expressly provides for nomination of candidates for county office by their respective political

- 22 -

parties during the primary election. *See* § 99.061(2), Fla. Stat. (candidates for county offices may qualify for nomination or election by filing the qualifying papers and paying "the filing fee and election assessment, and party assessment"); § 97.021(29), Fla. Stat. (defining "[p]rimary election" as "an election held preceding the general election for the purpose of nominating a party nominee to be voted for in the general election to fill a national, state, county, or district office"); § 100.051, Fla. Stat. (explaining that candidates listed on the general election ballot include those "candidates who have been nominated by a political party"); *see also* § 100.031, Fla. Stat. ("A general election shall be held in each county . . . to choose a successor to each elective . . . county . . . officer . . . ."); § 100.041(1), Fla. Stat. ("In each county, a clerk of the circuit court, sheriff, superintendent of schools, property appraiser, and tax collector shall be chosen by the qualified electors at the general election in each year the number of which is a multiple of 4."); § 98.015(1), Fla. Stat. ("A supervisor of elections shall be elected in each county at the general election . . . ."). Therefore, by banning a candidate for county constitutional office from running by party or seeking nomination by party, the ordinance directly conflicts with the Florida Election Code. And this Court has explained that a local government "cannot forbid what the legislature has expressly licensed, authorized or required." *Rinzler*, 262 So. 2d at 668.

The majority attempts to circumvent this conflict by equating no-party affiliation candidates and minor political party candidates with nonpartisan elections. *See* majority op. at 7 (citing §§ 99.0955, 99.096, Fla. Stat.). But this is a serious misunderstanding of the Florida Election Code and basic election law. Sections 99.0955(1) and 99.096 allow for no-party affiliation candidates and minor political party candidates to participate in a partisan general election by a petition process as well as appear on the general election ballot alongside major party candidates nominated in the primary election. However, these statutory provisions do not provide a mechanism for nonpartisan elections. Stated otherwise, section 100.051 does not preclude candidates with no-party affiliation and minor political party candidates from appearing on the general election ballot; however, section 100.051 expressly provides for candidates who have been nominated by a political party in the primary election to appear on the general election ballot.

Accordingly, because the Orange County ordinance prohibits candidates from running based on their party affiliation or seeking the nomination of their party during the primary election, which is expressly provided for in the Florida Election Code, the ordinance directly conflicts with the Florida Election Code.

### III. Conclusion

As explained above, the Florida Election Code expressly preempts the Orange County ordinance, an ordinance that is in direct conflict with the Florida

Election Code regarding whether candidates nominated by major political parties in the primary election may appear on the general election ballot for county constitutional officers. I would approve the decision of the Fifth District Court of Appeal in *Orange County v. Singh*, 230 So. 3d 639 (Fla. 5th DCA 2017), which held that the Florida Election Code preempts the Orange County ordinance requiring nonpartisan elections for county constitutional officers. [7]

Therefore, I respectfully dissent.

CANADY, C.J., and LAWSON, J., concur.

Application for Review of the Decision of the District Court of Appeal – Constitutional Construction/Direct Conflict of Decisions

Fifth District - Case Nos. 5D16-2509 and 5D16-2511

(Orange County)

Gregory T. Stewart, Carly J. Schrader, and Evan J. Rosenthal of Nabors, Giblin & Nickerson, P.A., Tallahassee, Florida; and Jeffrey J. Newton, County Attorney, and William C. Turner, Jr., Assistant County Attorney, Orange County, Orlando, Florida,

for Petitioner

John H. Pelzer of Greenspoon Marder LLP, Fort Lauderdale, Florida; Michael Marder of Greenspoon Marder LLP, Orlando, Florida; Eric D. Dunlap, Assistant General Counsel, Orange County Sheriff's Office, Orlando, Florida; Scott

---

7. As I would approve the Fifth District's decision concluding the ordinance is expressly preempted, I would also approve the Fifth District's decision affirming the remaining issues presented by Respondent regarding standing, the single-subject rule, and the ballot title and summary.

Randolph, pro se, Orlando, Florida; and Gigi Rollini of Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., Tallahassee, Florida,

for Respondents Rick Singh, Orange County Property Appraiser, John W. Mina, Sheriff of Orange County, and Scott Randolph, Tax Collector of Orange County

Nicholas A. Shannin of Shannin Law Firm, P.A., Orlando, Florida,

for Respondent Bill Cowles, Orange County Supervisor of Elections

Laura Youmans, Legislative Counsel, Florida Association of Counties, Tallahassee, Florida,

for Amicus Curiae Florida Association of Counties, Inc.

David H. Margolis, Orlando, Florida,

for Amicus Curiae Orange County Clerk of the Circuit Court